UNITED STATES of America, Appellee,

v.

**Naylor R. HARRISON, Jr., Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Jay C. WISSLER, Appellant.**

Nos. 82–5031, 82–5087.

United States Court of Appeals,
Fourth Circuit.

Argued June 10, 1983.

Decided Sept. 6, 1983.

Rehearing Denied Oct. 13, 1983.

Charles G. Bernstein, Baltimore, Md. (Andrew D. Levy, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for appellant Harrison.

Jeffrey J. Valocchi, Downingtown, Pa. (Valocchi & Fischer, Downingtown, Pa., on brief), for appellant Wissler.

Price O. Gielen, Asst. U.S. Atty., Baltimore, Md. (J. Frederick Motz, U.S. Atty., Baltimore, Md., on brief), for appellee.

---

Before HALL, SPROUSE and ERVIN, Circuit Judges.

SPROUSE, Circuit Judge:

After a joint jury trial in the United States District Court for the District of Maryland, Naylor R. Harrison, Jr., and Jay C. Wissler were convicted of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846. Harrison was individually convicted of three additional counts of knowingly or intentionally distributing cocaine, in violation of 21 U.S.C. § 841(a)(1). Both men appeal their convictions, assigning nine errors in the conduct of the trial below, including among others (1) improper denial of jury instructions, (2) prosecutorial misconduct; (3) failure to set aside the verdict for insufficient evidence; and (4) refusal to allow separate trials. None of the appellants' contentions has sufficient merit to warrant discussion except their argument concerning prosecutorial misconduct.

Harrison and Wissler's trial lasted four days, during which there were several instances of improper colloquy involving the Assistant United States Attorney and Wissler's defense counsel. At one point the verbal exchanges became so heated the trial court sternly admonished both sides: "I will instruct the jury that argument is argument. Now both of you have gotten way out of line and I've let you get out of line and I shouldn't have done it, the whole group of you." This admonishment was prompted by the prosecutor's rebuttal argument in which he said:

Now the first thing I want to talk about is the law of conspiracy because it was grossly, grossly misrepresented to you. And let me—maybe the first thing I should do is let you know where I stand. I would never in a million years say I love that man or that man. I *hate* them both and I *hate* their kind and what they're doing to our society.

The appellants strenuously contest the propriety of these comments, and argue that their prejudicial effect upon the jury can only be cured by a new trial.

The prosecutor's comments clearly were improper and he should have been rebuked not only by the trial judge, but by his superior, the United States Attorney. The government had expended considerable resources in presenting convincing evidence of Harrison and Wissler's guilt, but the prosecutor's senseless conduct jeopardized these otherwise solid cases. The more serious, although perhaps less tangible, consequences of these unfortunate comments are the basic image of unfairness they project and the inevitable stain they place on our trial system. The prosecutor, as much as any other officer in the judicial process, has an obligation to safeguard the right to trial by an impartial jury. *See Berger v. United States,* 295 U.S. 78, 85, 88, 55 S.Ct. 629, 632, 633, 79 L.Ed. 1314 (1935). There are narrowly defined circumstances, however, where even egregious remarks will not necessarily require reversal of a conviction. This case presents such circumstances. The prosecutor's concededly improper comments were invited by the equally egregious conduct of Wissler's defense counsel. While not excusing the prosecutorial misconduct, this factor, together with the trial court's admonitions and other circumstances of the trial, saves an otherwise well-prosecuted case from reversal.

Whether improper argument by government counsel has so prejudiced the trial process as to require reversal must be gauged from the facts of each trial. *See Miller v. State of North Carolina,* 583 F.2d 701, 706 (4th Cir.1978). Like others, this court has employed various tests in making this determination, depending on the requirements of the particular case. In *United States v. Elmore,* 423 F.2d 775 (4th Cir.), *cert. denied,* 400 U.S. 825, 91 S.Ct. 49, 27 L.Ed.2d 54 (1970), for example, we were most concerned with whether the remarks were "pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential." *id.* at 781, *quoting Berger v. United States,* 295 U.S. 78, 89, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). In *United States v. Callanan,* 450 F.2d 145, 151 (4th Cir.1971), we identified the relevant considerations as:

"Whether the untoward remarks prejudiced [the defendant] must be tested by 'the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error'." In *Miller v. State of North Carolina,* 583 F.2d 701 (4th Cir.1978), this court suggested that the content of the prosecutor's comments and their calculated effects on the jury's decision always should be considered in deciding whether a new trial is necessitated. In *United States v. Karas,* 624 F.2d 500 (4th Cir.1980), *cert. denied,* 449 U.S. 1078, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981) we looked to the factors announced in *United States v. Leon,* 534 F.2d 667 (6th Cir. 1976) in determining whether the prosecutor's remarks constituted reversible error.

The court in *Leon* identified four factors which are central to determining whether improper prosecutorial comment is so damaging to the defendant's trial as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. 534 F.2d at 679. These factors best embody all the considerations we deemed relevant in earlier cases, and they will be applied here.

There is no question the evidence against both Wissler and Harrison was strong. The government produced five witnesses who described various drug transactions involving either or both of the defendants. Their testimony was corroborated by telephone and hotel records, placing Harrison and Wissler at specified locations during the relevant time frames. The government also introduced tape-recorded conversations between the defendants and a key witness in the prosecution's case. Portions of those recordings contained highly incriminating statements concerning the whereabouts and value of an unrecovered package of cocaine. In light of this formidable evidence, the government's case did not, as the appellants contend, revolve solely around the credibility of its witness. Nor does it appear that the prosecutor's outburst enhanced already sound cases.

It is equally clear the prosecutor's comments were not deliberately placed before the jury in a manner calculated to evoke personal prejudice against the defendants. *See, e.g., Miller v. State of North Carolina,* 583 F.2d 701 (4th Cir.1978). Rather, his comments were provoked if not invited by defense counsel for Wissler. At one stage of his closing argument, for example, defense counsel expressed bewilderment that "a representative of ... my government, [would] twist testimony and tell you something false on the chart that he put in front of you." He prefaced this attack on the prosecutor with an emotional expression of "love" for the defendant Wissler. At another juncture in closing argument, Wissler's defense counsel dismissed an apparently well-founded objection as "another good prosecutorial trick" to interrupt the presentation of the defendant's case. Later, Wissler's defense counsel again repeated the "twist testimony" charge and strongly intimated the prosecutor was guilty of complicity in a key witness' allegedly false testimony. Finally, Wissler's defense counsel concluded his argument in a highly-emotional state, relating to the jury his client's personal pleas made to him only moments before in a private meeting. The prosecutor's offensive remarks were made against this backdrop of improper defense argument.

Any statement of personal belief jeopardizes the integrity of the trial process. This is doubly true when the statement is cast in prejudicial and emotional terms, like the prosecutor's comments here. Courts generally recognize, however, that statements of personal belief, while error, do not constitute *reversible* error if they are invited or provoked by opposing counsel. *See, e.g., U.S. v. Mouton,* 617 F.2d 1379, 1385 (9th Cir.), *cert. denied,* 449 U.S. 860, 101 S.Ct. 163, 66 L.Ed.2d 77 (1980); *United States v. Cooper,* 577 F.2d 1079, 1086 (6th Cir.), *cert.*

denied, 439 U.S. 868, 99 S.Ct. 196, 58 L.Ed.2d 179 (1978); *Del Cristo v. United States,* 327 F.2d 208, 209 (5th Cir.1964) (per curiam); *Henderson v. United States,* 218 F.2d 14 (6th Cir.1955). "The closing argument of the Prosecutor must be considered in the light of the previous arguments of defense counsel in order to determine whether there was provocation for what the Prosecutor said." *United States v. Hoffa,* 349 F.2d 20, 50 (6th Cir.1965), *aff'd,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). Whether from the heat of battle or tactical purpose, Wissler's defense counsel's closing argument in the instant case was riddled with provocation.

The conduct of both prosecutor and defense counsel could have seriously damaged the trial process. The trial judge, however, contained any prejudice which may have flowed from the remarks by promptly admonishing both sides and by later offering curative instructions before the case went to the jury. *See Elmore* 423 F.2d at 781, 782. This intervention by the trial judge, combined with the fact that the prosecutor's comments were not used to bolster his case, but instead were provoked by defense counsel's vitriolic attack, leads us to the conclusion that the defendants' trial was not "so fundamentally unfair as to deny [them] due process."[1] *Donnelly v. De Christoforo,* 416 U.S. 637, 645, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

Accordingly, the appellants' convictions are affirmed.

AFFIRMED.

---

1. We recognize that, in cases of prosecutorial misconduct, the due process clause should not always be the touchstone of whether reversal is appropriate. This court has inherent supervisory power to hold government prosecutors to a higher standard of conduct than required by the due process clause where necessary to ensure the fair administration of justice and to safeguard judicial integrity. *See, e.g., United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980). The exercise of this power, however, is most appropriate "in particular fact situations that do not lend themselves to rules of general application." *United States v. Gonsalves,* 691 F.2d 1310, 1316 (9th Cir. 1982). In the case *sub judice,* we do not feel it necessary to invoke our supervisory powers to reach a result not required either by the due process clause or notions of fair play.