800 F.2d 260
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Appellee,
v.
Thomas Allen BURNSIDE, a/k/a "Blue"; a/k/a "Big Boy", Appellant.
UNITED STATES of America, Appellee,
v.
Leonard McDOWELL, Appellant.
UNITED STATES of America, Appellee,
v.
Bruce PERKINS, Appellant.
UNITED STATES of America, Appellee,
v.
Frank SULLIVAN, Appellant.
UNITED STATES of America, Appellee,
v.
Billy BYRD, Appellant.
UNITED STATES of America, Appellee,
v.
James SLIGH, Appellant.
 Nos. 85-5119(L), 85-5121 and 85-5126 to 85-5129.
 United States Court of Appeals, Fourth Circuit.
 Argued June 3, 1986.
Decided Sept. 10, 1986.
 
 Daniel Greenberg, for appellant Thomas A. Burnside.
 Richard H. Warder (Warder & Steele on brief), for appellant Bruce Perkins.
 O.W. Bannister (Hill, Wyatt & Bannister on brief), for appellant Billy Byrd.
 James R. Mann, for appellant James Sligh.
 Stephen John Henry on brief, for appellant Leonard McDowell.
 John I. Mauldin & Allison on brief, for appellant Frank Sullivan.
 William C. Lucius, Assistant United States Attorney (Vinton D. Lide, United States Attorney; David J. Slattery, Assistant United States Attorney; Sylvia K. Amaker, Paralegal Specialist on brief), for appellee.
 D.S.C.
 AFFIRMED.
 Before WINTER, Chief Judge, RUSSELL, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendants were each convicted of conspiracy to possess heroin and cocaine with intent to distribute and conspiracy to distribute heroin and cocaine. In addition, defendant Burnside was convicted of twelve charges of distributing and causing the distribution of heroin and one charge of using the telephone to facilitate violations of narcotics laws. Similarly, defendant McDowell was convicted of twelve charges of distributing narcotics and four charges of using the telephone to facilitate violations of narcotic laws, while defendants Sullivan and Byrd were each convicted of one telephone charge. Thus, only defendants Sligh and Perkins were convicted solely of conspiracy. All defendants appeal, advancing numerous contentions, some applicable to only one or more individual defendants and some applicable to all. We see no merit in any contention, and we affirm.
 
 I.
 
 2
 The multi-count, multi-defendant indictment in this case resulted from an investigation into narcotics traffic in the Greenville, South Carolina area that began in May 1963 and continued for more than a year. As part of the investigation, there were twelve controlled purchases of heroin packaged in capsule form. Pen register devices, video and physical surveillance and a court-ordered wiretap were employed to develop evidence of illegal trafficking in heroin and cocaine in capsule form. it developed that the organization conducting the illegal activity in Greenville had ties to other cities along the Eastern Sea board, i.e., Norfolk, virginia; Bridgeport, Connecticut; Boston, Massachusetts; and others.
 
 
 3
 The investigation produced a plethora of evidence incriminating defendants. Several non-appealing defendants also named in the conspiracy count of the indictment pleaded guilty and testified for the government, as did one or more other participants who had been granted immunity.
 
 
 4
 Viewed in the light most favorable to the government, the evidence showed that defendant Burnside was the head of the narcotics operation with residences in Bridgeport, Connecticut, and Greenville, South Carolina, and with ties to other major narcotics distributors in the Northeast. Defendant McDowell was the major supplier of heroin and cocaine to street dealers in Greenville and to distributors in Roanoke, virginia. A wiretap on his telephone was used to record drug conversations with others. Defendant Perkins, whose brother was a drug distributor, delivered money for his brother to a major street dealer. At the time of his arrest, he had on his person a quantity of cash, and he was in a vehicle in which numerous capsules of narcotics were concealed. Defendant Sullivan served as courier for defendant McDowell, delivering heroin and cocaine to a primary street dealer. Defendant Byrd was also shown to be involved in the drug conspiracy. Surveillance of his home showed substantial traffic by vehicles utilized by other defendants, and pen register tapes showed hundreds of telephone calls between his residence and the residences of other defendants. He was also implicated in the recorded, taped telephone calls. Finally, defendant Sligh was arrested while in possession of twenty capsules of cocaine, there were numerous telephone calls from him to defendant McDowell, and there was evidence that a quantity of capsules containing narcotics had been delivered to him from an unindicted major street dealer.
 
 
 5
 Where necessary, other facts will be stated in connection with the contention to which they relate iii
 
 II.
 
 6
 Defendants Burnside and Perkins each contend that the evidence was legally insufficient to convict them. Burnside also argues that even if the evidence showed that he joined the conspiracy after it was formulated, he cannot be held accountable for crimes completed before he joined so that a consecutive sen tence that he received must be set aside. we disagree with all these arguments.
 
 
 7
 Viewed in the light most favorable to the government, Glasser v. United States, 315 U.S. 60 (1942), ample evidence supports Burnside's convictions. Both circumstantial evidence (the telephone records and home surveillance) and direct evidence (testimony of two coconspirators and telephone conversations recorded by wiretap) prove both the existence of a drug trafficking network and Burnside's participation in it. A coconspirator who pleaded guilty testified that on two occasions, drug dealers turned to Burnside for assistance; on one of these occasions, Burnside was called upon to resolve a financial dispute between two drug dealers. Burnside was acquainted with another of this coconspirator's sources and expressed the hope that this individual, known as "Bushwack," would not "talk" while in jail on drug charges. This testimony, coupled with circumstantal evidence in the form of surveillance and a patt-rn of telephone calling, is more than enough to connect Burnside to the conspiracy for the entire period as charged.
 
 
 8
 Since we conclude that the evidence does not require a finding that Burnside joined the conspiracy after it was ongoing, his contentions about his sentence are unavailing. Defendant does not contend that his sentence exceeded statutory limits. Given the broad sentencing discretion accorded a district judge, we do not review the sentence, despite its apparent severity.
 
 
 9
 The evidence against Perkins falls into three categories:(i) the testimony of Michael Fisher, a codefendant who pleaded guilty, that Perkins delivered drug money to his brother on one occasion;[2] (2) Perkins' arrest in Norfolk, Virginia for possession and distribution of heroin, and (3) a series of phone calls between perkins' residence (his parents' home) and the homes of other conspirators. On the basis of this evidence, Perkins was convicted of drug conspiracy.
 
 
 10
 The conclusion that Perkins participated in the conspiracy cannot be absolutely certain because it arises from circumstantial evidence. Nonetheless, we think that the evidence is leg ally sufficient to support that conclusion. As we have stated, " 'Once the evidence of a conspiracy is established, evidence establishing beyond a reasonable doubt a connection of a defendant with the conspiracy, even though the connection is slight, is sufficient to convict him with [sic] knowing participation in the conspiracy.' " United States v. Laughman, 618 F.2d 1067, 1076 (4 Cir.), cert. denied, 447 U.S. 1076 (1980) (emphasis in original), quoting United States v. Dunn, 564 F.2d 348, 357 (9 Cir.1977). Since the jury could properly have concluded on the basis of this evidence that, beyond a reasonable doubt, perkins conspired with the others, we reject his argument.
 
 III.
 
 11
 Defendants contend that it was improper for the district court to admit into evidence telephone records showing a series of telephone calls between the residences of most of the defendants and evidence derived from surveillance of automobiles registered to some of the defendants or those residing with them. They urge that the evidence was irrelevant because it could not be shown that defendants, rather than other members of their households, made or received the telephone calls or operated the vehicles observed by police.
 
 
 12
 We are not persuaded by this contention. Federal Rule of Evidence 401 defines "relevant evidence" as any evidence "having any tendency to make the existence of any fact ... more probable or less probable than it would be without the evidence." Frequent telephone calls and visits among the households of the defendants certainly tend to show the existence of a conspiracy. Defendants 'were free to offer proof and to argue that the telephone calls and visits were innocent in nature. The mere fact that the pattern of activity is consistent with explanations other than guilt does not render the evidence inadmissible as irrelevant; at most, it only dilutes its probative value.
 
 IV.
 
 13
 While defendants argue that the government failed to comply with the Jencks Act, 16 U.S.C. Sec. 3500, in at least three in stances, we see no basis on which to disturb the convictions. The government did fail to produce the notes adopted by Garle Jefferson with respect to her purchases of narcotics, because it was not aware that the notes existed. When they were discovered, copies were furnished to defense counsel and counsel were offered, but declined, the opportunity to cross-examine the witness further.
 
 
 14
 The statement of DEA agent Sprankle was produced in timely fashion prior to his testimony in accordance with the statute. The record shows that defense counsel were given full opportunity to study and digest the material furnished before undertaking their cross-examination of the witness.
 
 
 15
 Finally, the delay in providing the transcript of the questioning of Rosalind Arrington was attributable to the fact that she had just been interviewed and the transcript of the inteview had not been prepared. when it was completed, it was furnished to defense counsel, and the witness was recalled and subjected to the extensive additional cross-examination.
 
 
 16
 In any event, we perceive no prejudice to defendants in any of the three instances which we have described.
 
 V.
 
 17
 Defendants lodge three challenges to the manner in which the jury reviewed the materials produced by certain telephone wire taps. They contend that (1) the district judge failed to conduct a proper in camera review of the tapes; (2) the government's transcripts of the tape recordings should not have been submitted to the jury in the absence of defendants' stipulation to their accuracy; and (3) transcripts of tapes not independently comprehensible to the jury should not have been submitted.
 
 
 18
 With regard to the alleged lack of any in camera review, -defendants contend that the district judge should have reviewed the tapes for audibility and accuracy prior to permitting the jury to hear them. in fact, the government played a portion of one tape to permit witnesses to identify the voices and offer testimony as to the further statements of those individuals. Problems with the sound equipment prevented the identification. The record clearly establishes that when defendants challenged the use of the transcripts, the district court reviewed each of the tapes at issue prior to playing it for the jury. The court verified the accuracy of the transcripts, stopping to correct errors and excise inaudible segments, a procedure approved by other federal appellate courts. United States v. Robinson, 776 F.2d 872, 876 (6 Cir.1983); United States v. Slade, 627 F.2d 293, 302 (D.C.Cir.) cert. denied, 449 U.S. 1034 (1980).
 
 
 19
 As we have previously held, the submission of accurate transcripts to assist the jury in listening to tape recordings rests within the discretion of the district court. United States v. Long, 651 F.2d 239, 243 (4 Cir.1981). The district court cannot be said to have abused that discretion here, particularly in view of the careful instruction to the jury that it was the final arbiter of what was said on the tape and could not rely on the transcript.
 
 
 20
 Accordingly, we reject these challenges.
 
 VI.
 
 21
 Finally, we find no merit in the contention that the district judge improperly interfered with and participated in the trial with the effect of influencing the verdict. Our study of the record persuades us that the district judge properly exercised his function in ruling on objections, asking clarifying questions and instructing or admonishing counsel on proper trial procedures.
 
 
 22
 Nor do we think that the district court abused its discretion in denying a mistrial based upon the prosecutor's brief reference to the necessity of halting drug traffic by "putting a stop" to the principals of drug distr ibution organizations. Defense counsel themselves had described the crimes charged in the indictment as a "serious, most dastardly crime" and even said that "drug and drug conspiracy are the types of cases that infuriate, inflame people, raises [sic) the passion of punishment within all of us." The government's rhetoric was not particularly inflammatory or emotional, and its comments comprised less than a single page of a twenty-three page summation. The govern ment's case was otherwise a strong one, and we therefore conclude that defendant's right to a fair trial was not impaired. See United States v. Harrison, 716 F.2d 1050 (4 Cir. 983), cert. denied, 466 U.S. 972 (1984).
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 We are constrained to state that counsel have placed an unnecessary and inexcusable burden on us by their failure to provide a statement of facts despite the requirements of F.R.A.P. 28(a)(3). Defendants literally have provided no "statement of the facts relevant to the issues presented for review." In other circumstances, we might be disposed to dismiss the appeals for such a flagrant violation of the rule. The government has similarly failed to provide a statement of the facts. it has supplied a summary of the record, i.e., a summary of the testimony of each witness in the order in which the witnesses testified, but it has made little or no effort to correlate the testimony and provide an overall narrative of the facts of the case
 
 
 [2]
 Fisher did not state, nor was he asked, whether Perkins knew that the money was for drugs