925 F.2d 1458
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Walter James REED, Jr., Defendant-Appellant.
 No. 90-5188.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 11, 1991.
Decided Feb. 15, 1991.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Winston-Salem. Hiram H. Ward, Senior District Judge. (CR-89-275-WS)
 Lawrence Jay Fine, Esquire, Winston-Salem, N.C., for appellant.
 Michael F. Joseph, Assistant United States Attorney, Greensboro, N.C. (Argued), for appellee; Robert H. Edmunds, Jr., United States Attorney, Greensboro, N.C., on brief.
 M.D.N.C.
 AFFIRMED.
 Before SPROUSE and WILKINS, Circuit Judges, and THOMAS SELBY ELLIS, III, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Defendant appeals his drug trafficking conviction on the ground that the prosecutor's improper statements in closing argument denied him a fair trial in violation of the Sixth Amendment. While we agree that the prosecutor's remarks were inappropriate, we find that the record taken as a whole does not support appellant's claim of prejudicial, reversible error. Accordingly, we affirm defendant's conviction.
 
 I.
 
 2
 Forsyth County, North Carolina, authorities commenced an investigation of crack cocaine trafficking activities in the county in August 1989. Pursuant to the investigation, a confidential informant, equipped with electronic transmitting devices, made four purchases of crack cocaine from an individual named Scottie Tomlinson. On August 24, 1990, the second of these occasions, the confidential informant accompanied Tomlinson to a One-Stop Mart to meet the supplier of the crack cocaine, who was to arrive in a black Toyota pickup truck. When the pickup arrived, a detective stationed thirty yards away was able to identify the appellant as the driver.[1] Tomlinson entered the pickup, which then left the One-Stop Mart and returned a short period later. Tomlinson then left the pickup and told the confidential informant that the crack cocaine the informant had purchased had been hidden by the supplier near a fire hydrant on New Greensboro Road because "Walter didn't want to meet anybody ... he was nervous about being in the area." The next day, the confidential informant, again wearing an electronic transmitting device, purchased crack cocaine from Tomlinson for the third time. They drove to the Skyland Village Apartments to pick up the crack cocaine. Parked there was the black Toyota pickup. Tomlinson obtained the crack cocaine from a source within the apartments and delivered it to the informant.
 
 
 3
 Thereafter, appellant was arrested and advised of his rights. According to the detective and agent who made the arrest, appellant then confessed (i) that he had lived at Skyland Village Apartments in August and September 1989, (ii) that he had sold crack cocaine to Tomlinson at least three times, and (iii) that he was involved in crack cocaine dealing because his brother was importing the drug from Georgia in quantities of two to three ounces at a time. At trial, appellant denied this confession, but admitted he had seen Tomlinson two or three times in August 1989 to purchase cocaine. Appellant's trial testimony also included admissions concerning his crack cocaine addiction and his previous convictions for possession of cocaine and drug paraphernalia, importation of cocaine, importation of marijuana, and the sale of cocaine. Finally, appellant admitted that he was on probation at the time of his arrest and that while on probation in August and September 1989, he had four "dirty urines," i.e., positive urinalysis test results indicating his use of illicit drugs.
 
 
 4
 In closing argument, the government's counsel twice used language that, although employed in the context of defendant's credibility, suggested to the jury that appellant's prior record showed a propensity to commit similar crimes in the future.[2] Timely objections to these statements were not sustained. Appellant claims on appeal that these closing remarks require reversal of his conviction. The government concedes the remarks were improper, but contends that the governing standard for reversal is not met here.
 
 II.
 
 5
 The test for reversal for prosecutorial misconduct of this sort is well-settled. It "has two components: that '(1) the prosecutor's remarks ... must in fact have been improper, and (2) such remarks ... must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.' " United States v. Brockington, 849 F.2d 872, 875 (4th Cir.1988) (quoting United States v. Hernandez, 779 F.2d 456, 458 (8th Cir.1985)); accord United States v. Chorman, 910 F.2d 102, 113 (4th Cir.1990). Our past decisions also establish four factors that should be considered in determining whether the challenged remarks prejudiced a defendant's fair trial right. They are:
 
 
 6
 (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused;
 
 
 7
 (2) whether the remarks were isolated or extensive;
 
 
 8
 (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and
 
 
 9
 (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.
 
 
 10
 United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir.1983); accord United States v. Chorman, 910 F.2d at 113. Consideration of these factors compels the conclusion that the challenged remarks, while improper,[3] do not warrant reversal of appellant's conviction.
 
 
 11
 Viewed as a whole and in context, we cannot conclude that the challenged remarks had any substantial tendency to mislead the jury and prejudice appellant. There were only two such remarks in seventeen pages of closing argument. The remarks were therefore isolated and not extensive. Moreover, in at least one of the two instances, the focus seems to be appellant's credibility, a central issue in the trial, and not propensity to commit similar crimes in the future. This and a review of the entire closing argument point persuasively to the conclusion that the challenged remarks were not made deliberately for the purpose of diverting the jury's attention to extraneous matters. Beyond this, our review of the record as a whole discloses abundant and convincing, competent evidence of appellant's guilt. Accordingly, we find, consistent with this Court's settled rule, that there is no valid ground for reversal of appellant's conviction. We therefore affirm.
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 Investigation disclosed that the pickup was registered in the names of the appellant and his brother at an address in Skyland Village Apartments, the apartment complex where the first crack cocaine transaction had occurred
 
 
 [2]
 The specific closing remarks of the prosecutor challenged by appellant are as follows:
 Yet he came into this courtroom yesterday and he told you he never said that. He admitted that he talked to both of them, but he said, "I never said that."
 Now isn't that interesting? This man admitted on the stand that he was court-martialed in 1985, that he had a conviction for selling cocaine, that he had convictions for other drug violations, and you can consider that for purposes of deciding whether he is a truthful person. You can consider that.
 You know, there's an old saying, and I'm sure you know, that the best indication of the future, the best indication of what's to come is what's already happened, that history is the best predictor of the future. And I would say to you that he is not truthful.
 * * *
 He wants you to believe him, and you know, I wish you could. But you consider his believability. You consider his conviction in '85 for selling cocaine, for selling cocaine, the very same thing he is here for now.
 
 
 [3]
 This appeal underscores the necessity for government counsel to exercise caution when referring in closing statement to prior convictions admitted under Rule 609, Fed.R.Evid