940 F.2d 653
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert GLASPIE, Defendant-Appellant.
 No. 90-5075.
 United States Court of Appeals, Fourth Circuit.
 Argued March 5, 1991.
Decided Aug. 15, 1991.
As Amended Oct. 22, 1991.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Elkins. Robert Earl Maxwell, Chief District Judge. (CR-89-232)
 John M. Purcell, Davis & Davis, Uniontown, Pa., for appellant.
 Lisa Ann Grimes, Special Assistant United States Attorney, Elkins, W.Va. (Argued), for appellee; William A. Kolibash, United States Attorney, Robert H. McWilliams, Assistant United States Attorney, Wheeling, W.Va. on brief.
 N.D.W.Va.
 AFFIRMED.
 Before PHILLIPS and NIEMEYER, Circuit Judges, and JANE A. RESTANI, Judge, United States Court of International Trade, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Robert Glaspie was convicted of distributing cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and conspiring to distribute cocaine in violation of 21 U.S.C. Sec. 846. On appeal, he argues that a prosecutor's comment made to the jury during the rebuttal phase of closing argument, regarding certain questions asked during the trial by Glaspie's attorney, violated his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel. He also argues that the absence of blacks from the venire violated his right under the Sixth Amendment to have the jury selected from a fair cross-section of the community. For the reasons given below, we affirm.
 
 I.
 
 2
 At Glaspie's trial, at which he declined to testify, the government introduced several witnesses who testified about Glaspie's cocaine distribution activities in the southwestern Pennsylvania area. One of the witnesses, Sam Miller, was a bouncer at a bar in Morgantown, West Virginia, who acted as a sometime "retail" distributor for Glaspie. Miller had been arrested earlier in a "sting" operation and agreed to cooperate with the government by testifying against Glaspie.
 
 
 3
 During cross-examination, Glaspie's attorney asked Miller if he was known as "the Candy Man," in reference to Miller's drug dealing activities. Miller admitted that that was his nickname. Other government witnesses who knew Miller were not aware of this nickname.
 
 
 4
 In the rebuttal phase of his closing argument, the prosecutor referred to the questions by defense counsel regarding Miller's nickname. The following dialogue occurred:
 
 
 5
 "PROSECUTOR: The "Candy Man." Now, that's real interesting, for there were only two people who knew that.
 
 
 6
 Sam Miller said, "I was known as the 'Candy Man.' I sold them the stuff." And there was only one other person though who agreed with him, the person who was asking the question, the defendant's lawyer.
 
 
 7
 How did he even know to ask that question?
 
 
 8
 [DEFENSE COUNSEL]: Objection, Your Honor! That's improper! May we approach the bench?
 
 
 9
 THE COURT: No. Your objection is overruled.
 
 
 10
 Following completion of the rebuttal argument, Glaspie moved for a mistrial, which the court denied. In this appeal, Glaspie argues that his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel were infringed by the prosecutor's comment on the defense counsel's questions to witnesses regarding the "Candy Man" nickname.
 
 
 11
 The government, of course, may not comment either directly or indirectly on a defendant's failure to testify at trial. Griffin v. California, 380 U.S. 609 (1965). The statement may be considered an indirect reference to a decision to remain silent only if the comment was "manifestly intended to be, or ... of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." United States v. Whitehead, 618 F.2d 523, 527 (4th Cir.1980) (quoting United States v. Anderson, 481 F.2d 685, 701 (4th Cir.1973), aff'd, 417 U.S. 211 (1974)).
 
 
 12
 In this case, there was no direct reference to Glaspie's failure to testify, and we do not believe that the prosecutor's statement can be fairly interpreted as an indirect comment on that fact. Although the prosecutor was inviting the jury to conclude that Glaspie's attorney knew that Miller was known as "the Candy Man" and that the attorney may have learned this from Glaspie, that is not the necessary conclusion. Glaspie's attorney could have learned the fact from Miller, from the government, or from some other source. Moreover it does not naturally follow that by making his comment the prosecutor highlighted for the jury Glaspie's refusal to testify. If the jury took it that way, they were repeatedly instructed by the court that no adverse inference could be drawn from the defendant's failure to testify. In these circumstances we conclude that any improper suggestion that may have been made was harmless.
 
 
 13
 Glaspie also argues that the prosecutor's statement had the effect of causing Glaspie's counsel to testify against Glaspie, thereby rendering counsel ineffective and denying Glaspie the right to counsel in violation of the Sixth Amendment. The prosecutor's statement clearly did not have so prejudicial an impact as to interfere with Glaspie's right to legal representation. The questioning by Glaspie's counsel revealed that Glaspie's counsel knew of Miller's nickname, but that knowledge is not tantamount to his giving testimony against Glaspie. To conclude otherwise would open the argument in every case that any leading question by counsel constituted testimony against his client because counsel may have derived the basis for the question from his client.
 
 
 14
 While we do not condone the statement by the prosecutor which might have opened speculation about matters between Glaspie and his counsel, we conclude that any defect that it may have introduced into the trial was harmless. The statement was made in passing and not as a deliberately improper one "to divert attention to extraneous matters." See United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir.1983), cert. denied, 466 U.S. 972 (1984). Moreover, there was overwhelming evidence of Glaspie's guilt. He was arrested with cocaine, a gun, and ammunition in his possession. Three witnesses testified that they received cocaine from him, and another witness testified seeing him with a large quantity of cocaine. One witness testified that Glaspie communicated with pagers. The government presented a tape-recording of a telephone conversation between Miller and a person whose voice was identified as Glaspie's in which they discussed a cocaine delivery. Any misjudgment on the prosecutor's part in making the statement did not render the trial unfair.
 
 II.
 
 15
 Glaspie also argues that his Sixth Amendment right to a jury trial was violated because no blacks were on the venire. Although he raised a timely objection, the only evidence he offered were the statements, "I know that in the Northern District of West Virginia, in some portions of it, there are blacks.... I believe that in the state of West Virginia there are about fifteen percent blacks in different areas." After the court observed that the last census indicated the blacks constituted 1.9 to 2% of the population, it said,
 
 
 16
 We have pursued with as much caution and care as is possible under the Jury Service and Selection Act of 1968 and the Jury Plan as approved by the Circuit Conference. Sometimes we have blacks on the jury and sometimes not. It is all done by a random selection process, you know.
 
 
 17
 Glaspie's objection was then overruled.
 
 
 18
 It is well established that the Sixth Amendment right to a jury trial includes the requirement that the petit jury be selected "from a representative cross section of the community." Taylor v. Louisiana, 419 U.S. 522, 528 (1975). A defendant establishes a prima facie violation of the fair-cross-section requirement if he demonstrates:
 
 
 19
 (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.
 
 
 20
 Duren v. Missouri, 439 U.S. 357, 364 (1979).
 
 
 21
 Blacks are undoubtedly a "distinctive" group under this analysis, and for purposes of discussion we accept the allegation that the absence of blacks on Glaspie's venire was not a statistical mirror of the community. Glaspie presented no evidence, however, from which it could be concluded that the underrepresentation was "due to systematic exclusion." The mere fact that there were no blacks on the venire, when there is no reason to believe that this lack of representation was the result of a deliberate policy, is not sufficient to satisfy the third prong announced in Duren. "[T]he Constitution does not require that the juror selection process be a statistical mirror of the community; it is sufficient that the selection be 'in terms of a "fair cross-section" ' gathered without active discrimination." United States v. Cecil, 836 F.2d 1431, 1445 (4th Cir.), cert. denied, 487 U.S. 1205 (1988).
 
 
 22
 For the foregoing reasons, we affirm Glaspie's convictions.
 
 
 23
 AFFIRMED.