19 F.3d 1431
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roger WATTY, Defendant-Appellant.
 No. 93-5062.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 10, 1994.
Decided March 28, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CR-92-278-S)
 Betty Jane Clark, Clark, Dansie & Melville, P.C., Washington, DC, for appellant.
 Raymond A. Bonner, Asst. U.S. Atty., Baltimore, MD, for appellee.
 Robert A. Melville, Clark, Dansie & Melville, P.C., Washington, DC, for appellant.
 Lynne A. Battaglia, U.S. Atty., Gary P. Jordan, First Assistant U.S. Atty., Baltimore, MD, for appellee.
 D.Md.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and HALL and WILKINSON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Roger Watty ("Watty") appeals his criminal conviction for conspiring to make false statements respecting matters within the jurisdiction of a federal agency. See 18 U.S.C.A. Sec. 371 (West 1966 & Supp.1993); id., at Sec. 1001 (West 1976 & Supp.1993). We affirm.
 
 
 2
 * Between July of 1990 and November of 1991, the time period of the charged conspiracy, Watty worked for the National Security Agency ("NSA") as a Designated Contracting Officer's Representative ("DCOR"). In this capacity, Watty and his codefendant Wardell Campbell ("Campbell"),[1] who also worked as a DCOR, were assigned to a loading dock to monitor the performance of a contract for moving services. During the relevant time period, the contract was initially with District Moving & Storage, Inc., and subsequently with Guardian Moving & Storage, Inc. (collectively "District/Guardian"). District/Guardian employed Miller Rhodes ("Rhodes") as a supervisor of its workers at the NSA loading dock to which Appellant Watty was assigned.
 
 
 3
 Under the terms of the contract, the Maryland Procurement Office of the United States Department of Defense ("the Defense Department")[2] paid District/Guardian only for the actual hours worked and the materials used. Accordingly, District/Guardian employees were required to sign a time and attendance log at the NSA loading dock. As DCORs for NSA, Appellant Watty and his codefendant Campbell were responsible for monitoring the attendance of the District/Guardian employees who signed the log. The Defense Department used this log as its sole means of keeping track of the hours worked by District/Guardian employees.
 
 
 4
 Appellant Watty was charged with conspiring with Rhodes, Campbell, and others to make false statements regarding matters within the jurisdiction of the Defense Department in violation of 18 U.S.C.A. Sec. 371 and Sec. 1001. The indictment alleged that these false statements caused false billings by District/Guardian to the Defense Department, and caused District/Guardian payroll checks to be received by Watty, Campbell, and Rhodes's girlfriend.
 
 
 5
 At trial, Rhodes testified for the government against Appellant Watty and Campbell. Rhodes's testimony revealed that during the summer of 1990, District/Guardian was having trouble providing the full complement of workers required under its contract with NSA. According to Rhodes, he therefore sought and obtained the approval of Appellant Watty and Campbell to fill in the NSA attendance log with the names of people who were not actually working.[3] One of the names that Rhodes used for this purpose was that of his girlfriend, Rosa Wester, who had formerly worked for District/Guardian but who lived in Korea at the time Rhodes entered her name in the log. Either Watty or Campbell, in his capacity as DCOR for NSA, then "verified" these inaccurate attendance logs by signing his name to them.
 
 
 6
 In addition, the government's evidence showed that Rhodes also agreed with Appellant Watty and his codefendant Campbell that Watty and Campbell could work for, and be paid by, District/ Guardian while on their job at, and also being paid by, NSA. Pursuant to this plan, both Watty and Campbell filled out District/Guardian employee applications and received District/Guardian employee identification numbers under their own names. Rhodes also testified that, instead of signing their own names to the NSA attendance logs, Watty and Campbell suggested that they use fictitious names, lest their supervisor discover that they were on the District/Guardian payroll. Therefore, on the days that they worked for District/Guardian, Watty and Campbell recorded the names of two former District/Guardian employees, Clay Cobb and Ron Yuhas, in the NSA log as aliases. Either Watty or Campbell then "verified" these entries for NSA.
 
 
 7
 Rhodes testified that District/Guardian subsequently issued checks to Rosa Wester for hours that she did not work, as well as to Appellant Watty and Campbell, in their respective names, for the hours that "Cobb" and "Yuhas" worked. Appellant Watty received $294.24 in 1990 and $37.91 in 1991 from District/Guardian for work that he did at the NSA loading dock under the assumed name Clay Cobb during times when he was supposed to be monitoring the District/Guardian workers on behalf of NSA.
 
 
 8
 Watty was convicted by a jury of the conspiracy charge, and sentenced by the district court to one year of probation, with six months home detention. He raises numerous issues on appeal.
 
 II
 
 9
 During the course of the government's investigation of the conspiracy, Rhodes agreed to cooperate with the government. Pursuant to this agreement, Rhodes taped a discussion that he had with appellant Watty on March 4, 1992. Prior to trial, Watty filed a motion, which the district court denied, to exclude this tape from evidence on the grounds that Watty's taped statements were of "no probative value" or were more prejudicial than probative. On the morning of trial, however, Watty notified the district court of the possibility that he would introduce the tape in his defense case. Watty contended in the district court, and argues on appeal, that his statements on the tape were not hearsay because they fall within the catch-all exception to the hearsay rule, Fed.R.Evid. 803(24).
 
 
 10
 "We review a district court's evidentiary rulings for an abuse of discretion." United States v. Hassan El, 5 F.3d 726, 731 (4th Cir.), petition for cert. filed, --- U.S.L.W. ---- (U.S. Dec. 13, 1993) (No. 93-7067). Rule 803(24) provides that a statement is not hearsay if it has "circumstantial guarantees of trustworthiness" and if the court determines that:
 
 
 11
 (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.
 
 
 12
 Fed.R.Evid. 803(24). The rule also provides that advance notice of intent to seek admission of evidence under the catch-all exception must be given to the adverse party. Id.
 
 
 13
 The district court ruled that the tape did not fall within Rule 803(24). It concluded that the evidence was not more probative on the point for which it was offered than any other evidence that Watty could procure. It also held that Watty's failure to give advance notice of his intention to use the tape did not meet the requirements of the Rule.[4]
 
 
 14
 The statements on the tape were hearsay, and the district court correctly determined that the requirements of Rule 803(24) were not met. Even if we assume that the statements met the other prongs of the catch-all exception, we agree with the district court that they could not satisfy the "more probative" requirement.[5] Watty's own testimony was surely at least as probative as the tape recording. In addition, to the extent that Watty desired to use the taped statements to rebut a charge of recent fabrication of his version of events, Watty could have sought to admit the tape pursuant to Fed.R.Evid. 801(d)(1)(B). We therefore conclude that the district court did not abuse its discretion in declining to admit the tape pursuant to Rule 803(24).
 
 III
 
 15
 During his closing argument, counsel for Appellant's codefendant Campbell remarked about the government's failure to enter into evidence the entire tape of a conversation between Rhodes and Campbell. In his rebuttal, the prosecutor argued that
 
 
 16
 You can bet, if I took anything out of context in those tapes, you would have heard about it. You can bet, if Miller Rhodes in those tapes said anything that contradicted what he said on the stand, you would have heard it. They have access to the tapes. You heard we gave copies to them. They were just as free to bring it out as I was. I brought out the points I wanted you to hear. They could bring out what they wanted you to hear, but they didn't.
 
 
 17
 (Supp. J.A. at 3-4). Watty objected to the prosecutor's comment on the grounds that it was improper because the district court had prevented Watty from introducing the tape of his conversation with Rhodes. The district court ruled that the prosecutor's rebuttal was a fair response to the argument made by Campbell's counsel.
 
 
 18
 On appeal, Watty claims that the prosecutor made these remarks in his initial closing, and that therefore the district court's ruling was based on an incorrect factual predicate. Watty is mistaken, however, about the timing of the prosecutor's remarks. The transcripts of the closing arguments and rebuttal included in the supplemental joint appendix indicate that the prosecutor's remarks were made in his rebuttal argument, not his initial closing. Moreover, the prosecutor's remarks were not improper. The district court did not preclude the defense from using the tapes to impeach Rhodes or to show that Watty had made prior consistent statements to his trial testimony.[6]
 
 IV
 
 19
 Watty also claims that the government produced insufficient evidence that he knew that the information that he verified in the NSA time and attendance logs was false, and insufficient evidence that the false statements were within the jurisdiction of a federal agency.[7] We do not agree.
 
 
 20
 Watty's sufficiency of the evidence claims essentially amount to disagreement with the jury's resolution of the facts. In any event, viewing the evidence in the light most favorable to the government, the record reveals sufficient evidence from which a reasonable jury could have concluded that Watty was guilty beyond a reasonable doubt of the offense charged. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 V
 
 21
 Watty raises additional claims which we have considered and also find to be without merit. Accordingly, the judgment of the district court is
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Campbell is not a party to this appeal
 
 
 [2]
 The Maryland Procurement Office handled the procurement of goods and services for the NSA
 
 
 [3]
 Rhodes testified that both Watty and Campbell were present ninety-nine percent of the time that falsifying the attendance log was discussed
 
 
 [4]
 The district court noted that Watty could impeach Rhodes with any statements on the tape by Rhodes that were inconsistent with Rhodes's trial testimony
 
 
 [5]
 Indeed, Watty does not claim on appeal that his statements on the tape met all of the requirements of the Rule. Rather, Watty contests only the district court's reliance upon his failure to give advance notice. Watty's "morning of trial" notice presented difficulties for the government, Watty's codefendant, and the court. See, e.g., Bruton v. United States, 391 U.S. 123 (1968). In any event, Watty's burden on appeal is to persuade us not merely that the government did not need notice, but also that the underlying evidentiary ruling was an abuse of discretion
 
 
 [6]
 In addition, even assuming that the remarks were improper, a reversal would not be required, as the remarks were a reasonable and invited response to the defense counsel's argument and did not unfairly prejudice the defendant. See United States v. Harrison, 716 F.2d 1050, 1051-53 (4th Cir.1983), cert. denied, 466 U.S. 972 (1984)
 
 
 [7]
 To be within the jurisdiction of an agency, there is no requirement that the false statements actually influence or affect agency action, as long as they have a " 'natural tendency to influence agency action or [are] capable of influencing agency action.' " United States v. Arch Trading Co., 987 F.2d 1087, 1095 (4th Cir.1993) (citation omitted)