**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Paul Michael MITCHELL,**
**Defendant–Appellant.**

No. 92–5506.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 5, 1993.

Decided Aug. 3, 1993.

Amended by Order Filed Aug. 25, 1993.

**236**

Anna M. Durbin, Law Offices of Alan Ellis, P.C., Philadelphia, PA, argued (Alan Ellis, on brief), for defendant-appellant.

Jennie L.M. Waering, Asst. U.S. Atty., Roanoke, VA, argued, for plaintiff-appellee.

Before RUSSELL and HALL, Circuit Judges, and PAYNE, United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

DONALD RUSSELL, Circuit Judge:

This case presents us with the question of whether prosecutorial overreaching was sufficiently egregious in this case to require reversal. The alleged error arose out of the repetition throughout the testimony and argument of counsel of inadmissible and prejudicial evidence. The rule in connection with prosecutorial overreaching has been stated in many opinions. That rule has been framed as the maxim that "[i]t is often said and often forgotten that the duty of a prosecuting attorney is not to convict defendants but to try them fairly." *McFarland v. United States,* 150 F.2d 593, 594 (D.C.Cir.1945). A more detailed statement appeared in the oft-quoted case of *Berger v. United States,* which merits repetition here:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

*Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), *overruled on other grounds by Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). With these basic principles in mind, upon a review of the record in this case we are of the opinion that the prosecution did exceed the bounds of established propriety and conclude that we must reverse the appellant's conviction and remand for a new trial.

A jury convicted Paul Mitchell ("appellant") of conspiracy to distribute cocaine and distribution of cocaine after a two-day trial in which he faced the adverse testimony of three of his cousins who had pled guilty to charges arising out of the same conspiracy. To counter this testimony, the appellant put his brother, Joel Mitchell, on the stand to testify in his behalf. Joel, however, had been convicted of participating in the same conspiracy after an earlier trial. On cross-examination, after attempting to impeach Joel with his prior conviction and with prior inconsistent statements from his trial, the

prosecution made statements to the effect that the jury at Joel's trial "obviously" did not believe his testimony. Apparently believing that this cross-examination laid a foundation for closing argument, the prosecution argued to the jury that Joel's testimony should be discredited because he had told the same story to another jury, and that jury convicted him. The prosecution also attempted to link that conviction to Joel's relationship to the appellant, suggesting that the appellant was guilty of involvement in the conspiracy by implication. Because we conclude that the prosecution's references to Joel's conviction and relationship to the appellant on cross-examination and in argument to the jury, when coupled with the district court's failure to give the jury a limiting instruction, constitutes plain error, we reverse the appellant's conviction and remand for a new trial.

## I.

The facts surrounding the underlying conspiracy in this case, which led to the convictions of three co-conspirators and the guilty pleas of eight others, are set forth in this Court's opinion in *United States v. Blevins,* 960 F.2d 1252, 1254–55 (4th Cir.1992). The November 16, 1990, indictment against the appellant came about as a result of statements made by the conspirators in the *Blevins* case after their arrests. Three of those defendants were siblings, and were also first cousins of the appellant: Wesley Mitchell, Ellen Sue Mitchell, and Jerry Mitchell. All three testified against the appellant at his trial. Two additional members of the conspiracy testified against the appellant: Robert Helton, Ellen's boyfriend, and Rodney Allison, a long-time associate of Jerry Mitchell. The appellant called four witnesses to testify on his behalf: Joel Mitchell, another convicted co-conspirator and the appellant's brother; Linda Mitchell, the appellant's wife; a state parole officer; and a state sheriff's office criminal investigator.

At trial on February 11 and 12, 1992, the prosecution began its case by calling DEA Agent David High, the agent responsible for this investigation. Agent High testified at trial as to the results of his year-long investigation into the drug conspiracy. The majority of his testimony covered his investigation that began in May of 1989 and led to the arrest and conviction of the eleven defendants indicted in March of 1990. High testified that he believed at the time of his investigation that Joel Mitchell was the leader of the conspiracy, and that Joel gave the drugs to Jerry for distribution. High stated, however, that he later concluded that the drugs flowed from Joel to the appellant, and then to Jerry for distribution on the street. High stated at the appellant's trial that he had never encountered the appellant during the investigation.

The prosecution then called Wesley Mitchell to testify. The substance of his testimony related to a drug transaction that took place on June 14, 1989 between Agent High, Joel, and the appellant. This transaction was the basis for Count 2 of the appellant's indictment, of which he was acquitted.

Ellen Sue Mitchell testified next. She stated that the appellant had asked her to sell marijuana for him. She also stated that the appellant had provided her and Robert Helton, her boyfriend, with cocaine for their personal use at her apartment on a number of occasions for free. Helton's statements at trial corroborated her testimony.

The next witness, Jerry Mitchell, was the government's key witness against the appellant. Jerry testified that after being released from jail in June of 1989, he purchased an eighth of an ounce of cocaine from the appellant. Jerry's testimony indicated that he thereafter purchased cocaine from the appellant on a regular basis—at least once a week until December 1989. These sales ran between a half an ounce to two ounces. Jerry had pled guilty to the charges against him as a result of this investigation, and in exchange for his testimony, had his sentence reduced from 230 to 51 months in custody.

The government's final witness, Rodney Allison, Jerry's distributor for the cocaine, testified that he was unaware of the source of Jerry's cocaine until one evening in Jerry's home. During their recreational use of cocaine and methamphetamine, Jerry revealed to Rodney that his source was the appellant.

The government also elicited testimony from Rodney that he had sold the appellant "a bag of pot in the early seventies."

In the appellant's defense, Joel testified that he had not supplied the drugs to the appellant. The thrust of Joel's testimony was to rebut Jerry's testimony that the appellant had been Jerry's source for cocaine. The appellant's wife testified as to their financial condition (poverty), and testified that, to her knowledge, the appellant did not use drugs.

On rebuttal, the government again called Agent High. High testified that it had been during the debriefing of the other co-conspirators that the appellant's name had arisen as a member of the conspiracy. He also admitted that he had testified at Joel's trial that he believed Joel had been the source of cocaine in the area. On redirect, High clarified his view of the framework of the conspiracy, and stated his belief that they had accidentally bypassed the appellant when their investigation had proceeded up the chain of the conspiracy to Joel at the top.[1]

On February 12, 1992, the jury found the appellant guilty on one count of conspiracy to distribute cocaine and two counts of distribution of cocaine. The appellant was acquitted on one count of distribution of cocaine. The appellant's trial counsel withdrew before the sentencing hearing, and was replaced by counsel representing him on appeal. The district court sentenced the appellant to 63 months, the bottom of the Guideline range based on his presentence report. The appellant now appeals, raising numerous issues. We need not address all of these issues, however, because the appellant's argument that the prosecution's conduct in this case deprived him of a fair trial is well taken and is sufficient to require a new trial.

## II.

### A.

During the appellant's trial, on cross-examination and in closing argument, the prosecution referred to, and indeed emphasized, Joel's conviction and relationship to the appellant. The pertinent portions of Joel's cross-examination and the prosecution's closing argument are as follows:

*Cross–Examination of Joel:* [2]

[AUSA] You were tried and convicted in this court on July of 1990; is that correct?

[Joel] Yes.

Q And were you convicted of a drug distribution conspiracy?

A Yes.

Q And I asked you, I said,

"Mr. Mitchell, you've been here and you've heard Wesley Mitchell tell this jury that on June 14, 1989 he went to your residence and obtained six grams of cocaine from you, and your brother Paul Mitchell for $400." Are you denying that to this jury?

A I never seen any cocaine.

Q Your answer at that time was, "I'm denying that I didn't give him no cocaine."

A I didn't give him any cocaine, and I never seen any cocaine.

Q And I asked you, "Are you denying that you knew that cocaine was present and handed it to him for the $400?" And you said, yes, you didn't know it wasn't, know it was cocaine, and I asked you what you did think he was giving you $400 for. You said you didn't ask.

A I didn't ask.

Q *But the jury obviously didn't believe that, did they, Mr. Mitchell?*

A *No, Ma'am.*

Q *They didn't because they convicted you of that charge, didn't they, sir?*

A *Yes, ma'am.*

1. The district court aptly observed that the substance of High's testimony on rebuttal was not really rebuttal testimony in that it had all come out already. Without objection from either side on this issue, the district court halted the rebuttal testimony *sua sponte*.

2. The transaction that was the subject of this portion of the cross-examination was the count of which the appellant was acquitted.

*Closing Argument:*

[W]hat you've seen is that Paul Mitchell's case is part of a larger case that was tried in July of 1990, and that ... his brother was convicted of being involved, the head of a drug organization involving cocaine distribution, and the appellant Mitchell wasn't indicted at that time because the evidence wasn't clear about his involvement until after some others had come forward and given their information....

[After listing the prosecution's witnesses].... Nothing about what they said has been contradicted except by Joel Mitchell who was convicted for doing this and has still not admitted to anyone that he was involved in a cocaine distribution organization.

. . . .

[After describing the transaction of which the appellant was acquitted].... [L]adies and gentlemen, other than Joel Mitchell's denial of what happened, and I ask you to question the credibility of Joel Mitchell, *convicted of that same transaction by a jury* sitting where you're sitting back in July of 1990 when he denied it at that time as well. He's also the brother of the defendant. So, ladies and gentlemen, ask yourselves what motivation he has not to tell the truth about what happened on June 14 of 1989....

[On rebuttal].... Ladies and gentlemen, ... Joel Mitchell wouldn't admit to you he was involved in the drug trade and he was convicted by a jury. His case is on appeal. He's hoping it's going to get reversed.

. . . .

And then Joel Mitchell testified. And ladies and gentlemen, you have to evaluate Joel Mitchell's testimony with great care. *He got up and told the same story to another jury in July of 1990. They didn't believe it then either. And ladies and gentlemen, he denied any involvement in the June 14 transaction back in 1990. He was convicted of that transaction.* He was convicted of drug conspiracy, and he was convicted of distribution activities, and he

was convicted of using the telephone, and he was convicted of attempting to possess kilogram quantities of cocaine and pounds of marijuana. He's convicted of using a firearm during the course of a drug transaction, and his case is on appeal. He got 17 years. So, when you're talking about persons who are motivated not to tell the truth, look closely at Joel Mitchell's motivations to, one, help his brother, not implicate himself, deny everything. So, you must look at that. [emphasis added]

Despite the clear implication in the prosecution's closing argument that Joel's conviction should be considered as evidence of the appellant's guilt, the district court failed to instruct the jury that Joel's conviction after trial could not be used as substantive evidence of the appellant's guilt, even though the district court instructed the jury that the guilty pleas of the testifying co-conspirators could not be so considered. We must now determine whether the prosecution's conduct constituted reversible error.

 At the outset, we note that a new trial is required in this case only if the prosecution's improper conduct constituted plain error under Fed.R.Crim.Pro. 52(b),[3] because the appellant's trial counsel failed to enter an objection to either the cross-examination or the prosecution's argument during closing. Rule 52(b) enables the Courts of Appeals to correct "those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings,' " *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)), but only if those errors are " 'particularly egregious,' " *id.* at 15, 105 S.Ct. at 1046 (quoting *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)). The plain error doctrine is to be employed only in " 'those circumstances in which a miscarriage of justice would otherwise result.' " *Id.* (quoting *Frady,* 456 U.S. at 163 n. 14, 102 S.Ct. at 1592 n. 14). This Court must examine the record as a whole because

---

**3.** Fed.R.Crim.Pro. 52(b) provides: "Plain errors or defects affecting substantial rights may be

noticed although they were not brought to the attention of the court."

the evaluation of plain error claims is not to be an extraction of isolated instances of error; the question is whether the error was "such as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice." *See id.* at 16, 105 S.Ct. at 1046.

The appellant argues that the prosecution impermissibly referred to Joel's conviction and relationship to the appellant on cross-examination and in argument to the jury, and that these errors, coupled with the district court's failure to give the jury a limiting instruction, require reversal. Because plain error analysis requires us to examine the record as a whole, in ruling on the appellant's contentions we necessarily consider the effect of these alleged errors on the trial collectively.

### B.

■ The appellant's primary contention is that the prosecution's closing argument deprived him of a fair trial by improperly emphasizing his brother's conviction for participating in the same conspiracy and arguing that the jury should discredit Joel's testimony because Joel's jury had disbelieved him at his trial. We agree that the prosecution's conduct deprived the appellant of a fair trial.

■ "Improper remarks during closing argument do not always mandate retrial. 'The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Adams v. Aiken,* 965 F.2d 1306, 1318 (4th Cir.1992) (quoting *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)), *cert. denied* — U.S. ——, 113 S.Ct. 2966, 125 L.Ed.2d 666 (1992). In this Circuit, "[t]he test for reversible prosecutorial misconduct generally has two components: that '(1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.'" *United States v. Brockingham,* 849 F.2d 872, 875 (4th Cir.1988) (*quoted in United States v. Chorman,* 910 F.2d 102, 113 (4th Cir.1990)).

### 1.

With respect to the first prong of the *Brockingham* analysis, on these facts, we find the prosecution's statements to be improper. We find the prosecution's closing argument particularly improper because those statements encouraged the jury to convict the appellant for an impermissible reason: it urged the jury to convict the appellant because the appellant's brother had been convicted of participating in the same conspiracy.

■ It is a well-accepted principle that "evidence about the conviction of a co-conspirator is not admissible as substantive proof of the guilt of a defendant." *United States v. Leach,* 918 F.2d 464, 467 (5th Cir. 1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2802, 115 L.Ed.2d 976 (1991). In criminal cases, it is the province of the defendant's jury to resolve questions of credibility; referring to what another jury may have done is clearly improper because the defendant's jury cannot permissibly rely on what they may assume a previous jury to have found. *See United States v. Samad,* 754 F.2d 1091, 1100 (4th Cir.1984) (observing that a prosecutor may not argue evidence not presented to the jury). Such conduct "raises the concern that a defendant might be convicted based upon the disposition of the charges against the [co-conspirator], rather than upon an individual assessment of the remaining defendant's personal culpability." *Blevins,* 960 F.2d at 1260. Indeed, improper use of a co-conspirator's conviction infringes on the principle that the "central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence." *Delaware v. Van Arsdale,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).

In the case at hand, the prosecution made multiple references to Joel's conviction. Those references were often accompanied by references to Joel's relationship to the appellant. It is apparent from the record that the clear thrust of the prosecution's argument was that the appellant's brother's conviction should be used as substantive evidence of the appellant's guilt. This is clearly not permis-

sible. Accordingly, we conclude that the prosecution's closing argument, in fact, was improper.

## 2.

■■■■ In addition to examining the propriety of the prosecution's conduct in this case, under *Brockingham,* we must consider whether the conduct in this case "prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *Brockingham,* 849 F.2d at 875. A number of factors should be considered when evaluating the issue of prejudice to the defendant: "(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters." *United States v. Harrison,* 716 F.2d 1050, 1052 (4th Cir.1983), *cert. denied,* 466 U.S. 972, 104 S.Ct. 2345, 80 L.Ed.2d 819 (1984) (*quoted in Chorman,* 910 F.2d at 113). The issue of "[w]hether improper argument by government counsel has so prejudiced the trial process as to require reversal must be gauged from the facts of each trial." *Id.* at 1051. On these facts, we find that the appellant was deprived of his right to a fair trial.

*Harrison* first requires us to consider the extent to which the prosecution's conduct in this case had a tendency to mislead the jury and prejudice the appellant. *Harrison,* 716 F.2d at 1052. The courts' concerns with respect to impeachment by prior conviction inform our analysis on this point. Impeachment on cross-examination of a defendant's witness by inquiry into a prior conviction of the witness can be seriously prejudicial to a criminal defendant, especially where the witness has a special relationship to the defendant. *See* Fed.R.Evid. 609 advisory committee's note; 3 Weinstein & Berger, *Weinstein's Evidence* ¶ 609[04], at 609–59 (1992). In those situations, the witness' criminal conviction may be held against the defendant, raising the concern that the defendant may be convicted by implication. Although our

analysis at this point only centers on the prosecution's closing argument, the concern expressed above is implicated by the prosecution's conduct in this case. The misleading nature of the prosecution's comments is best seen in the prosecution's reference to Joel's jury not believing him, and that therefore the appellant's jury should not believe him as well. That comment clearly calls into question evidence not before the appellant's jury, which implicates the appellant's 6th Amendment confrontation rights. *See Pointer v. Texas,* 380 U.S. 400, 403–08, 85 S.Ct. 1065, 1067–70, 13 L.Ed.2d ·923 (1965); *see also United States v. Carroll,* 678 F.2d 1208, 1209–10 (4th Cir.1982). The prosecution's references to Joel's relationship to the appellant and to Joel's conviction for participating in the same conspiracy thus had a strong tendency to mislead the jury and prejudice the appellant.

The second factor we must consider is whether the remarks were isolated or extensive. *Harrison,* 716 F.2d at 1052. In this case, the prosecution repeatedly referred to Joel's conviction and his relationship to the appellant. The prosecution stressed the fact that Joel was the appellant's brother in its opening statement to the jury, pressed the issue of Joel's conviction on cross-examination of Joel, stressed to the jury in closing argument that another jury did not believe Joel, that the jury had convicted him, and that he was the appellant's brother, and, finally, repeated those statements on rebuttal. Even considering the extent of the prosecution's statements only during closing argument, we cannot help but conclude that the statements were extensive, and not merely isolated instances of error.

Having concluded that the prosecution's argument had a tendency to mislead the jury and was extensive in scope, we apply a modified harmless error analysis as the next factor in weighing the prejudice to the appellant. That factor requires us to weigh, absent the prosecution's comments, the strength of competent proof introduced against the appellant. *Id.*

To prove its case against the appellant, the prosecution introduced the testimony of the appellant's co-conspirators to prove his in-

volvement in this extensive drug distribution conspiracy. Although we express no opinion as to the merits of such a claim, the record does tend to show that the prosecution introduced evidence that would have been sufficient to withstand a challenge based on sufficiency of the evidence on appeal, although the prosecution's case was not overwhelming. Had the prosecution avoided the improper argument concerning Joel's conviction and relationship to the appellant, the remaining case may have garnered a conviction.

Finally, we must consider whether the prosecution deliberately placed the improper comments before the jury in order to divert the jury's attention to those improper matters. *Id.* Given the extent of the improper argument, which ran throughout the appellant's trial, we believe that no other conclusion is possible than our finding that the improper argument was deliberately placed before the jury in an attempt "to divert attention to extraneous matters." *Id.*

The consideration of all of these factors leads us to conclude that the prosecution's closing argument "prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial," *id.*, thereby constituting prosecutorial misconduct. Consequently, we find that the prosecution's improper argument "has so prejudiced the trial process as to require reversal." *Harrison*, 716 F.2d at 1051.

### C.

■ Because the appellant failed to object to this conduct at trial, we are now forced to review his claims for plain error. In order to determine whether the prosecution's conduct prejudiced the appellant's substantial rights for purposes of Fed.R.Crim.Pro. 52(b), we must again weigh a number of considerations. In a case similar to the one at hand, the Fifth Circuit considered a number of factors that we find to be relevant to our plain error review in this case:

> the presence or absence of a limiting instruction; whether there was a proper purpose in introducing the conviction or guilty plea of the [witness]; whether the plea or conviction was improperly emphasized or used as substantive evidence of guilt; whether the alleged error was invited by defense counsel; whether an objection was entered or an instruction requested; whether the failure to object could have been the result of tactical considerations; and whether, in light of all the evidence, the error was harmless beyond a reasonable doubt.

*United States v. Miranda*, 593 F.2d 590, 594 (5th Cir.1979).[4] We now consider those factors in conjunction with the prejudicial effect of these errors on the appellant.

In *Miranda*, the prosecution had urged the jury in closing argument to convict the defendant because an earlier jury had found a co-conspirator guilty of the same offenses. *Miranda*, 593 F.2d at 592–93. The court agreed with the defendant that "the clear import of the prosecutor's argument was that the jury should convict appellant because an earlier jury had convicted his co-conspirator of the same charges on much less evidence," *id.* at 593, and recognizing that it is clearly improper for a prosecutor to urge a jury to use a co-conspirator's conviction as substantive evidence of guilt, concluded that "a foul blow has been struck here, one which has affected the substantial rights of the defendant and requires a new trial free of such prejudicial comments," *id.*

The first factor that we examine is whether or not a limiting instruction was given. In the case at hand, in the face of the prosecution's repeated improper comments, the district court failed to give the jury a limiting instruction concerning the use of Joel's conviction. Thus, this factor weighs in the appellant's favor.

■ Generally, the district court should instruct the jury that evidence of a witness' conviction is to be used only for the limited purpose of impeachment and not as substantive evidence of the defendant's guilt. *United States v. Davis*, 838 F.2d 909, 917 (7th Cir.1988). In this case, the district court

---

4. While we find these factors helpful in resolving this difficult case, we in no way suggest that the Fifth Circuit's analysis in *Miranda* supplants our analysis in *Harrison*. We merely employ the factors set forth in *Miranda* to illuminate the prejudice to the appellant in this case.

failed to give an instruction concerning Joel's conviction. Although that conviction was properly before the jury for impeachment purposes, in light of the overwhelming prejudicial effect that Joel's conviction would have on the appellant as his brother, the district court should have given an instruction to the jury limiting their use of Joel's conviction to impeachment.[5]

Although we find it difficult to believe that any limiting instruction could have cured the prejudicial effect of the prosecution's repeated improper comments, we believe that the failure of the district court to instruct the jury that Joel's conviction could not be used as substantive evidence of the appellant's guilt was error weighing in the appellant's favor.[6]

The second and third factors to consider are whether the prosecution had a proper purpose for the introduction of the co-conspirator's conviction, and whether the prosecution improperly emphasized the conviction or used it as substantive evidence of guilt. We have already concluded, *supra*, that the prosecution introduced this evidence for the improper purpose of misleading the jury and that Joel's conviction was argued as substantive evidence of guilt by implication. These factors also favor the appellant.

The fourth and fifth factors focus on the conduct of defense counsel. This inquiry looks to not only whether the error was invited by defense counsel, but also whether the failure of defense counsel to object was conceivably the result of tactical considerations. We acknowledge that defense coun-

sel failed to object to the prosecution's improper comments in this case.

We find it difficult to believe, on these facts, that defense counsel invited the repeated comments about Joel's conviction and his relationship to the appellant—the defense's posture at trial can hardly be described as aggressive. We also find it impossible to believe that defense counsel failed to object to these comments for tactical reasons: what tactical reason could exist to allow the prosecution to advance improper arguments that are likely to result in the conviction of one's client? Despite defense counsel's failure to object to this conduct, we do not find these factors to weigh against the appellant; in fact, we conclude that they favor his argument.

Finally, we consider whether, in light of the evidence presented against the appellant, the error in this case was harmless beyond a reasonable doubt. As we indicated above, although we have sustained convictions as based on sufficient evidence in cases such as this, we believe that the prosecution's conduct in this case so infected the appellant's trial that it would be impossible for us to determine whether the error was harmless beyond a reasonable doubt. While the prosecution presented testimony that implicated the appellant in a drug distribution conspiracy, the DEA's investigation had failed to turn up the appellant as a participant in the organization. The appellant is entitled to have a jury consider the conflicting inferences to be drawn from that evidence without having the impermissible taint of Joel's conviction and relationship to the appellant clouding their

---

**5.** Although we conclude that the district court's failure to give a limiting instruction was error in the face of repeated instances of improper comment and questioning by the prosecution, we do recognize the difficulty the district court faced in this case. It made numerous efforts to assist defense counsel in an effort to protect the appellant's right to a fair trial, including excluding clearly inadmissible evidence without objection from defendant's counsel. It is not clear from the record whether defense counsel objected to the jury instructions, or even proposed instructions for the district court's use. It is clear, however, that counsel for the defendant was delinquent in his representation and the district court took great pains to insure the defendant a fair trial. In light of the situation, the failure to

issue a limiting instruction on this point is understandable.

**6.** As one court has noted, "[o]nly in those rare situations in which other 'aggravating circumstances' have exacerbated the prejudice will the failure to give cautionary instructions result in plain and reversible error." *United States v. DeLucca*, 630 F.2d 294, 299 (5th Cir.1980), *cert. denied*, 450 U.S. 983, 101 S.Ct. 1520, 67 L.Ed.2d 819 (1981). This case presents the converse of that situation: in this case, the failure to give cautionary instructions is an "aggravating circumstance" that exacerbated the prejudice to the appellant.

judgment. Thus, we conclude that the error was not harmless beyond a reasonable doubt.

In sum, the factors employed by the Fifth Circuit in *Miranda* weigh heavily in the appellant's favor. The only factor that we find to favor the prosecution is the lack of objection by defense counsel to these errors. In light of the overwhelming weight of the other factors, however, we conclude that the prosecution's conduct has prejudiced the appellant's substantial rights. We find support for this conclusion in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), a case interpreting the precursor to Fed.R.Crim.Pro. 52(b). In *Kotteakos*, the Supreme Court stated that,

> if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Id.* at 765, 66 S.Ct. at 1248. Keeping in mind the Supreme Court's strictures in *Young*, that Rule 52(b) allows the Courts of Appeals to correct "those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings,'" *Young*, 470 U.S. at 15, 105 S.Ct. at 1046 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)), only if those errors are "'particularly egregious,'" *id.* at 15, 105 S.Ct. at 1046 (quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)), we believe that this case presents "'circumstances in which a miscarriage of justice would otherwise result,'" *id.* (quoting *Frady*, 456 U.S. at 163 n. 14, 102 S.Ct. at 1592 n. 14), were we not to grant the appellant a new trial.

The prosecution's errors in this case present us with a clear case of overreaching. Not content with its case against the appellant, the prosecution chose to use improper suggestion on cross-examination and improper jury argument to obtain a conviction. We believe that an examination of the appellant's trial as a whole reveals "particularly egregious" error that requires a new trial.

In addition to the improper jury argument, which we have discussed at length, the prosecution posed the following questions to Joel on cross-examination after attempting to impeach Joel with evidence of his past convictions under Fed.R.Evid. 609(a) and his prior inconsistent statements:

> [AUSA] But the jury obviously didn't believe that, did they, Mr. Mitchell?
>
> [Joel] No, Ma'am.
>
> Q They didn't because they convicted you of that charge, didn't they, sir?
>
> A Yes, ma'am.

Although we express no opinion as to whether the cross-examination concerning Joel's convictions constitutes reversible error under Fed.R.Evid. 609(a), the two above quoted questions raise the specter, described above, of impermissibly placing another jury's conclusions before the defendant's jury. A brief examination of Rule 609 itself will explain these concerns.

Rule 609(a) allows the admission of evidence that a witness has been convicted of a crime "[f]or the purpose of attacking the credibility of [that] witness," subject to the balancing test of Fed.R.Evid. 403. Fed. R.Evid. 609(a)(1). Rule 403 is used, in part, to prevent prejudice to the defendant through impeachment of witnesses with convictions that may implicate the defendant by association. The Advisory Committee Note on the 1990 Amendment to Rule 609(a) makes this point clear:

> Rule 403 now clearly protects against unfair impeachment of any defense witness other than the defendant. There are cases in which a defendant might be prejudiced when a defense witness is impeached. Such cases may arise, for example, when the witness bears a special relationship to the defendant such that the defendant is likely to suffer some spill-over effect from impeachment of the witness.

Fed.R.Evid. 609 advisory committee's note. This policy protects the defendant from those "instances where the defense witness's prior

criminal past would be held against the defendant. For instance, if the witness is a close relative of the defendant, the jury's distrust of the witness if informed of his criminal past may rub off on the defendant." 3 Weinstein & Berger, *Weinstein's Evidence* ¶ 609[04], at 609–59 (1992). If the trial court decides, in its discretion, to admit the conviction, then "[i]n proving the felony conviction on cross-examination, the United States Attorney may 'ask about "the name of the crime, the time and place of conviction, and the punishment." ' " *United States v. Boyce,* 611 F.2d 530, 530 (4th Cir.1979) (citation omitted). Limiting cross-examination to those facts prevents the government from adding "to the pungency of the impeachment," 3 Weinstein, *supra* ¶ 609[05], at 609–66 (quoting McCormick, *Evidence* § 43 at 98 (1984)), a fact that the courts have recognized for many years:

> From the common sense point of view a plea of guilty by an alleged fellow conspirator is highly relevant upon the question of the guilt of another alleged conspirator. If A's admission that he conspired with B is believed, it is pretty hard to avoid the conclusion that B must have conspired with A. This is one of the cases, therefore, where evidence logically probative is to be excluded because of some countervailing policy. There are many such instances in the law. . . .
>
> *The foundation of the countervailing policy is the right of every defendant to stand or fall with the proof of the charge made against him, not against somebody else.* Acquittal of an alleged fellow conspirator is not evidence for a man being tried for conspiracy. So, likewise, conviction of an alleged fellow conspirator after a trial is not admissible as against one now being charged. The defendant has a right to have his guilt or innocence determined by the evidence presented against him, not by what has happened with regard to a criminal prosecution against someone else.

*United States v. Toner,* 173 F.2d 140, 142 (3d Cir.1949) (emphasis added). That countervailing policy is the concern that the prosecution's conduct implicates in this case. We believe that the prosecution's cross-examination of Joel contributed to the overall effect of the improper conduct in this case and find that it was prejudicial to the appellant.

The district court compounded the prosecution's errors in this case when it failed to give a limiting instruction with respect to the effect of the non-testifying co-conspirators' guilty pleas.[7] Considering this error in connection with the other instances of error, we conclude that the district court's failure to give a limiting instruction on this point compounded the prejudicial effect of the prosecution's improper argument.

▬ With respect to the guilty pleas of non-testifying co-conspirators, this Court has observed that "any mention of guilty pleas of non-testifying co-defendants should be avoided at trial wherever possible." *Blevins,* 960 F.2d at 1260. In *Blevins,* we concluded that "it was … error for any mention of the pleas of the non-testifying co-defendants to have been made," *id.* at 1261, and that the error was of constitutional dimension, *id.* at 1262. In this case, the prosecution referred to the non-testifying co-conspirators' guilty pleas on a number of occasions and the district court failed to instruct the jury on this point as well. Thus, this was error as well, and we believe that it was prejudicial to the appellant.

In light of the errors in this case and the prosecution's improper actions, which permeated the entire trial, we "cannot say, with fair assurance, … that the judgment was not substantially swayed by the error." *Kotteakos,* 328 U.S. at 765, 66 S.Ct. at 1248. Accordingly, we must reverse the appellant's conviction.

### III.

As we have observed, this case presents us with a prosecutor who chose to employ im-

---

7. The district court instructed the jury as follows: Some witnesses have pled guilty to a crime arising out of the same events for which the defendant is on trial. This guilty plea is not evidence against the defendant, and you may consider it only in determining the witness' believability. You should consider this witness' testimony with great caution, giving it the weight you feel it deserves.

permissible argument to achieve a conviction. In light of the pervasive nature of this error, and the failure of the district court to even attempt to cure that error, we conclude that this case presents the "rare instance" where fundamental fairness requires that we grant the appellant a new trial. Because we conclude that, on these facts, the prosecution's improper conduct amounts to plain error affecting substantial rights, we reverse the appellant's conviction and remand for a new trial.

*REVERSED AND REMANDED.*