14 F.3d 599
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Danny Franklin WILLIAMS, Petitioner-Appellant,
v.
Aaron JOHNSON, Warden; Lacy Thornburg, Attorney General,
Respondents-Appellees.
 No. 92-7240.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 27, 1993.
Decided Dec. 17, 1993.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.
 Paul MacAllister Green, North Carolina Prisoner Legal Services, Inc., for appellant.
 Clarence Joe DelForge, III, Asst. Atty. Gen., North Carolina Department of Justice, for appellees.
 E.D.N.C.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, WILKINSON and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Danny Franklin Williams was convicted of first degree rape and burglary by a jury in Lenoir County, North Carolina and was sentenced to life plus forty years imprisonment in June 1982. His conviction and sentence were affirmed on direct appeal to the North Carolina Supreme Court. State v. Williams, 305 S.E.2d 519 (N.C.1983). After exhaustion of all state remedies, Williams sought habeas corpus relief in the United States District Court for the Western District of North Carolina, under 28 U.S.C. Sec. 2254, claiming ineffective assistance of counsel and denial of due process. The district court concluded that Williams was not prejudiced by counsel's failure to investigate and present an incompetency defense or his failure to make a sufficient investigation of potentially exculpatory matters and to conduct an adequate cross-examine of key witnesses. The district court also found that Williams was not denied due process by the trial court's failure, sua sponte, to conduct a competency hearing. We affirm.
 
 I.
 
 2
 On January 4, 1982, at approximately 5:00 a.m., an eighty-one year old woman was violently raped and beaten in her home. The assailant gained entry by requesting to use the phone because his car was stuck in a ditch. The victim was unable to make a positive identification of Williams as her attacker, but she provided a general physical description of the assailant as a man who "looks like" Williams, and described the jacket he was wearing as brown with white splotches on the side. (J.A. at 478.) During the early morning hours of the same day, Williams, his brother Victor Williams, and Victor's good friend and brother-in-law Donald Merritt, were riding in a car that became stuck in a ditch across the road from the victim's house. After unsuccessful attempts to free the car, Williams walked away and was gone for nearly an hour. Merritt told police that he saw Williams go to the victim's house and that when Williams returned to the car, he said that he had "just beat[en] and raped an old lady across the road" and he asked Merritt to "help him finish it." (J.A. at 441.) In addition, authorities later discovered two heaters that were removed from the victim's house under Williams's trailer.
 
 
 3
 Williams was arrested and charged with first degree rape and burglary, and he was held in the Lenoir County Jail pending trial. On January 18, 1992, after several weeks of confinement, Williams slit his wrist and subsequently was sent to Central Prison pursuant to a safekeeping order. Five days later, Williams's state trial counsel prepared a Motion Suggesting Incapacity to Plead and an Order for Observation and Treatment, but neither motion was ever filed.
 
 
 4
 On March 31, 1982, Williams was transferred to the Craven County Jail to face unrelated charges for breaking and entering a motor vehicle and larceny. His counsel for the Craven County charges successfully moved that Williams be committed to a hospital for a competency evaluation. Dr. Mary Rood, a forensic psychiatrist, examined Williams between April 1 and April 7, 1982, and found him competent to proceed on the Craven County charges.
 
 
 5
 The Lenior County rape and burglary trial was held in June 1982, two months after the competency examination. The defense theory was that while Williams left the disabled car to walk some thirty-five miles to his home, one of Williams's companions raped the victim. Williams testified extensively and coherently about his version of the facts, but the jury nonetheless rendered a guilty verdict.
 
 II.
 
 6
 On appeal, Williams argues his state trial counsel was ineffective both in his failure to request a competency hearing and present an incompetency defense, and in his failure to develop certain exculpatory evidence. A claim of ineffective assistance of counsel is a mixed question of law and fact subject to de novo review in this court. Washington v. Murray, 952 F.2d 1472, 1476 (4th Cir.1991). In Strickland v. Washington, 466 U.S. 668 (1984), the Court established the basic test for evaluating a lawyer's effectiveness. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness" Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 
 
 7
 Williams first claims that his state trial counsel was ineffective in failing to request a competency hearing because there was evidence of his two suicide attempts, destructive behavior, drug abuse, and severe depression. The district court found that although trial counsel's failure to investigate Williams's competency fell below an objective standard of reasonableness, it was not sufficient to undermine the court's confidence in the outcome of the state trial, and, therefore, the court denied habeas corpus relief. We affirm the denial of the habeas petition on this basis. In addition, we believe that Appellant failed to satisfy even the first prong of the Strickland test because trial counsel's actions did not fall below an objective standard of reasonableness.
 
 
 8
 State trial counsel, Fred W. Harrison, was an experienced criminal defense lawyer who had employed psychiatric defenses and requested competency hearings for other defendants. Counsel testified that he did not file the motion to have Williams evaluated for competency because he was aware of Dr. Rood's contemporaneous finding that Williams was competent to stand trial on unrelated charges in Craven County. Dr. Rood examined Williams in April 1982; Williams's trial on the rape charges was in June 1982. Williams told his counsel that he wanted another competency examination so he could be admitted to the hospital, thus securing a reprieve from prison. When he learned that the evaluation would take place in prison, Williams did not want to pursue the matter. Counsel was entitled to rely on his experienced observations supported by the prior competency evaluation. "There is no constitutional basis for a rule that would require a psychiatric evaluation in every ... case." Clanton v. Bair, 826 F.2d 1354, 1357 (4th Cir.1987), cert. denied, 484 U.S. 1036 (1988). Furthermore, the trial transcript reveals that Williams testified in a comprehensive, coherent, and lucid manner; his testimony consumed nearly sixty pages in the trial transcript.
 
 
 9
 Because we find counsel's conduct was reasonable, it follows that we believe Williams was not prejudiced by counsel's performance. However, were we to find counsel's performance deficient, we agree with the district court that Williams failed to demonstrate a "reasonable probability that he was incompetent at the time of trial". (J.A. at 130.) Williams was found competent to stand trial on unrelated charges in Craven County only two months prior to his rape trial. Although the Craven County charges involved breaking and entering and this dispute involved a more serious offense, there is no legal distinction in standards of competency for different crimes. See Dusky v. United States, 362 U.S. 402, 402-03 (1960) (stating the test for competency to stand trial for any crime). Furthermore, no expert witness opined at the habeas evidentiary hearing in 1992 that Williams was incompetent at the time of trial in 1982.*
 
 
 10
 Williams next contends that state trial counsel was not properly prepared at trial because he failed to develop certain exculpatory evidence. Particularly, Williams argues that counsel did not adequately explore evidence regarding the brown jacket worn by the assailant when he committed the crime. He stresses that Victor gave a statement to police before the trial that on the night of the crime, Merritt was wearing a brown jacket with an emblem on the front. Since the victim was unable to make a positive identification of the assailant but testified that her attacker wore a brown coat, Williams contends that the evidence relating to the coat was critical to his conviction.
 
 
 11
 The district court found that although the evidence of the coat "could have been more artfully developed at trial", (J.A. at 132), Williams did not show sufficient prejudice to warrant habeas corpus relief under Strickland. We agree. There is a presumption that counsel's use of evidence is in accord with "sound trial strategy." Strickland, 466 U.S. at 689. The trial record revealed that counsel did offer evidence of what each of the three men wore on the night of the rape. Also, counsel cross-examined the victim and focused on her uncertainty as to the identity of her attacker and her description of the jacket the assailant was wearing. Moreover, we do not believe that counsel's failure to more fully emphasize evidence as to the clothing worn by the men that night affected the outcome of the case. Although the victim could not positively identify the assailant, there was other evidence that implicated Williams. For instance, the two heaters taken from the victim's home on the night of the rape were later found under Williams's trailer. Also, Victor and Merritt provided testimony incriminating him. Victor testified that after they got stuck in the ditch, Williams walked away for about an hour, and when he returned "he acted nervous". (J.A. at 412.) Merritt testified that Williams admitted committing the crime. Williams disputed his companions' accounts of the incident, but it was within the province of the jury to assess the credibility of the witnesses. United States v. Mitchell, 1 F.3d 235, 240 (4th Cir.1993).
 
 III.
 
 12
 Williams also contends that he was denied due process by the trial judge's failure to inquire, sua sponte, into his competency. We agree with the reasoning of the district court that no bona fide doubt about Williams's competence was raised at trial by his demeanor or other evidence of psychiatric problems. Therefore, we conclude that Williams was not denied due process.
 
 IV.
 
 13
 For the reasons stated herein, Williams's petition for a writ of habeas corpus is denied, and the opinion of the district court is affirmed.
 
 AFFIRMED
 
 
 *
 Williams's expert witness, Dr. John Warren, was unable to express with certainty that Williams was incompetent in 1982. Dr. Robert Rollins, a forensic psychiatrist, testified for the State and gave an expert opinion that Williams had been competent to stand trial in 1982