30 F.3d 131
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Johnson Okachuku CHUKUNDAH, Defendant-Appellant.
 No. 93-5888.
 United States Court of Appeals, Fourth Circuit.
 Submitted: June 28, 1994.
Decided: July 14, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, District Judge. (CR-93-248-A)
 Denise Jakabcin Tassi, Alexandria, VA, for appellant.
 Helen F. Fahey, U.S. Atty., Bradley Lui, Sp. Asst. U.S. Atty., Alexandria, VA, for appellee.
 E.D.Va.
 AFFIRMED.
 Before PHILLIPS and WILLIAMS, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Johnson Okachuku Chukundah appeals his conviction for importing heroin in violation of 21 U.S.C.A. Sec. 952 (West 1981 & Supp.1994), possessing heroin aboard an aircraft arriving in the United States in violation of 21 U.S.C. Sec. 955 (1988) and possessing with intent to distribute heroin in violation 21 U.S.C.Sec. 841 (1988).* Chukundah raises two challenges to the trial proceedings. Finding no error, we affirm Chukundah's conviction.
 
 
 2
 * The evidence at trial demonstrated that Chukundah traveled from Lagos, Nigeria, via Amsterdam, Netherlands, to Dulles International Airport ("Dulles") in Virginia. Upon arrival at Dulles, Inspector Dave Matheny of the United States Customs Service encountered Chukundah at the primary inspection area. Based on Chukundah's nervous behavior, Matheny referred Chukundah to an examination area. When Matheny asked Chukundah what he had to declare, Chukundah responded that he had some food items. Matheny then directed Chukundah to place his baggage onto the examination belt. In a nervous manner, Chukundah placed all of his bags, except a briefcase, on the examination belt. After searching the other luggage, Matheny took the briefcase, placed it on the belt, and directed Chukundah to open it. After adjusting the combination lock, Chukundah opened the briefcase.
 
 
 3
 Matheny found in the briefcase numerous items belonging to Chukundah, including a checkbook, an address book, and business cards. After removing these items, Matheny noticed that the briefcase felt unusually thick and heavy on one side. He also noticed the smell of vinegar coming from the briefcase. An X-ray of the briefcase showed a thick light colored line on its bottom. Accordingly, Matheny then drilled a hole in the side and discovered a white, powdery substance that field tested positive for heroin.
 
 
 4
 Senior Special Agent Anthony Mangione also inspected the briefcase and found the bottom to be very heavy and thick. He found in the briefcase a bank book bearing the picture of Chukundah, a bank statement in the name of Johnny Okachuku Chukundah, a bank book in the name of Chukundah's wife, Chukundah's business card, and two Nigerian passports, both bearing Chukundah's picture. In addition, the briefcase contained toothpaste, a toothbrush, and a comb.
 
 
 5
 After being arrested and informed of his Miranda rights, Chukundah told Mangione that a man named "Freddy" had given him the briefcase at the airport in Nigeria and had asked him to give it to his neighbor, "Ambrose." Chukundah could not give Freddy's last name, his address, or any identifying characteristics. In addition, at the time of his arrest, Chukundah was not sure where Ambrose lived, did not know the spelling of Ambrose's last name, and did not know Ambrose's telephone number. There was no listing of an Ambrose in Chukundah's personal telephone book which he had with him at the time of his arrest.
 
 
 6
 Senior Special Agent Glenn Nick of the United States Customs Service--an expert witness for the government--testified that heroin couriers usually travel by air, that they generally conceal the heroin on their person or in carry-on baggage, that the heroin on Chukundah's possession had a street value of between one and a half and two million dollars, and that the volume and purity of heroin that Chukundah had was consistent with distribution and in no way was consistent with personal consumption.
 
 
 7
 After being convicted on all three counts, the district court sentenced Chukundah to 121 months of incarceration, and five years of supervised release on each count, running concurrently. The district court also ordered that Chukundah pay a special assessment of $150. Chukundah timely appeals.
 
 II
 
 8
 Chukundah argues that there was insufficient evidence to find him guilty. He contends that the government failed to present evidence that he knew or had reason to know that the briefcase contained heroin.
 
 
 9
 In evaluating the sufficiency of evidence to support a conviction, we view the evidence in the light most favorable to the government, and determine if any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir.1982). Furthermore, we accord the benefit of all reasonable inferences to the government. Tresvant, 677 F.2d at 1021.
 
 
 10
 Although the government did not produce direct evidence of Chukundah's specific knowledge that the briefcase contained heroin, there was sufficient evidence that a reasonable jury could find that Chukundah knowingly and willingly imported heroin into the United States. Matheny testified that Chukundah appeared nervous when asked routine questions about the nature of his trip. Chukundah, in a nervous manner, placed all of his bags, except the briefcase, on the examination belt. In addition to the heroin, the briefcase contained many of Chukundah's personal items.
 
 
 11
 Furthermore, Chukundah's defense was weak. He could not state Fred's last name, his address, or any identifying characteristics. At the time of his arrest, Chukundah was not sure where Ambrose lived, did not know the spelling of Ambrose's last name, and did not know Ambrose's telephone number. Finally, there was no listing of an "Ambrose" in Chukundah's personal telephone book which he had with him at the time of his arrest.
 
 
 12
 In considering circumstantial, as well as direct evidence, and allowing the government the benefit of all reasonable inferences from the facts proven to those sought to be established, Tresvant, 677 F.2d at 1021, we find this evidence sufficient to prove that Chukundah knew or had reason to know that the briefcase contained heroin.
 
 III
 
 13
 Chukundah alleges that the prosecutor engaged in misconduct by making inflammatory and unduly prejudicial remarks during closing argument. The only objection presented at trial was that the argument was not rebuttal. Thus, Chukundah presses an argument on appeal that was never presented to the district court. We review remarks not objected to for plain error. United States v. Mitchell, 1 F.3d 235, 239 (4th Cir.1993). We have reviewed the disputed comments and find that even if we discerned any impropriety in the comments, they certainly did not affect Chukundah's substantial rights. United States v. Olano, 61 U.S.L.W. 4421, 4424 (U.S.1993). Accordingly, this claim is meritless.
 
 
 14
 Because Chukundah's allegations of error are meritless, we affirm the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the material before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 Chukundah was charged in a three-count indictment