**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 98-4124

LEONARD R. TAYLOR, a/k/a Robert L.
Taylor,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
James P. Jones, District Judge.
(CR-97-31)

Submitted: December 8, 1998

Decided: January 14, 1999

Before MURNAGHAN, WILKINS, and TRAXLER,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Louis Dene, DENE & DENE, P.C., Abingdon, Virginia, for Appel-
lant. Robert P. Crouch, Jr., United States Attorney, S. Randall Ram-
seyer, Assistant United States Attorney, Abingdon, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Leonard Robert Taylor appeals his thirty-six-month sentence imposed for violation of his supervised release. Taylor noted a timely appeal and his attorney filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), in which he represents that there are no arguable issues of merit in this appeal. Taylor filed a supplemental brief in which he argues that the evidence regarding the aggravated assault, and thus the Grade A violation, was insufficient to support the enhanced sentence. He also asserts that counsel at the revocation hearing was ineffective for failing to interview and call certain witnesses in his defense. Because we find that the evidence was sufficient to support the Grade A violation and can discern no other error on this record, we affirm.

Taylor pled guilty and was convicted of conspiracy to manufacture, distribute, and possess with intent to manufacture and distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) (1994) and 21 U.S.C. § 846 (1994). The district court sentenced Taylor to serve 120 months in prison and four years of supervised release. Among the standard conditions of supervision imposed on Taylor was the requirement that he notify his probation officer within seventy-two hours of being arrested or questioned by law enforcement officials.

Taylor's supervised release began in May 1997. On January 20, 1998, the government filed a motion to revoke Taylor's supervised release. In the motion, the probation officer reported that on November 20, 1997, Taylor was convicted in the Bristol, Virginia, General District Court, of trespassing in violation of the provision that he not commit another federal, state, or local crime. Also, on October 25, 1997, Taylor was arrested and charged with assault in relation to a domestic dispute in Bristol, Tennessee. On November 12, 1997, he was arrested and charged with driving while intoxicated. On Novem-

2

ber 16, 1997, Taylor was charged with assault/domestic violence in Bristol, Tennessee. Taylor was arrested in Bristol, Virginia, on December 28, 1997, and charged with no operator's license and driving while intoxicated. On January 1, 1998, Taylor was charged with assault on his wife, and on January 15, following another domestic dispute, Taylor was arrested and charged with aggravated assault and simple assault in Bristol, Tennessee. Taylor failed to report any of these arrests to his probation officer, in violation of the terms of his supervised release. The probation officer noted that all of the offenses constitute at least Grade C violations, with the aggravated assault--being a crime of violence punishable by more than one year in prison--constituting a Grade A violation. The probation officer recommended that Taylor's supervised release be revoked and that he be sentenced to the maximum term of imprisonment.

Taylor admits that he did not report any of these charges to his probation officer; he merely argues that the evidence on the aggravated assault was insufficient to support the enhanced sentence for a Grade A violation. The evidence supporting the aggravated assault charge consisted of Taylor's wife's statement to the police, the police report, and the Taylors' testimony at the hearing. The police report and Taylor's wife's contemporaneous statement show that Taylor had been out with friends and when he and his wife arrived at their apartment, they started arguing. Taylor went into the bedroom and his wife--who, at the time, was two months pregnant--remained in the living room. Taylor called for his wife to come to the bedroom. She refused. According to the wife's statement, Taylor then entered the living room, began slapping and choking his wife and telling her that she was trying to send him back to jail. The wife left the apartment and called Abuse Alternative. She then returned to the apartment and began packing her clothes. Taylor grabbed her by the neck, threw her on the bed and sat on her stomach, and, covering her mouth began yelling at her, blaming her for his having to return to court. Taylor left the apartment to call the police.

Taylor returned and discovered that his wife had locked the door. He began pounding on it. When his wife opened the door, Taylor had a box cutter in his hand. She retreated to the kitchen, retrieved a butcher knife, and held off Taylor while she made her way to the door. During the hearing, Taylor's wife denied the accuracy of the

3

statement, saying that the officer had planned to revise the statement and return it to her the following day, but he did not. She testified that Taylor never struck her and she was not afraid of him. Taylor testified, denying that he had a box cutter in his hand when he returned to the apartment after being locked out.

The district court found the Taylors' testimony incredible and found by a preponderance of the evidence that Taylor committed the charged violations of his supervised release by violating state and local law when driving while intoxicated and without an operator's license. The court also found that Taylor committed the charged assaults against his wife, and on January 15, 1998, committed aggravated assault when he displayed a box cutter in connection with an assault on his wife. The court found that the aggravated assault charge --a felony--involved a crime of violence punishable by more than one year of imprisonment and, therefore, constituted a Grade A violation. The court revoked Taylor's supervised release and sentenced him to a thirty-six-month term of imprisonment.

Taylor does not contest that he violated his supervised release. Rather, he argues only that the evidence supporting the aggravated assault was insufficient. However, there was sufficient evidence to support the district court's finding that Taylor committed this offense. Taylor's challenges to the district court's credibility determination are not reviewable on appeal. See United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993). Because Taylor committed a crime of violence punishable by more than one year, see Tenn. Code Ann. § 39-13-102 (1996); USSG § 7B1.1(a)(1),* the district court appropriately revoked Taylor's supervised release. See USSG § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release.").

Upon revocation of supervised release, the district court appropriately referred to the revocation table in the guidelines. Section 7B1.4 provides that for a Grade A violation, the imprisonment range for a person with a criminal history category VI is 33 to 41 months. Because Taylor's sentence does not exceed the maximum limit established for violation of the terms of release in Grade A offenses under

_____

*U.S. Sentencing Guidelines Manual (1997).

4

18 U.S.C. § 3583(e) (1994), this court reviews Taylor's sentence only to determine if it is plainly unreasonable. See 18 U.S.C. § 3742(a)(4) (1994). Given the facts of this case and the nature of Taylor's conduct, we cannot say that the thirty-six-month sentence imposed by the district court was plainly unreasonable.

Pursuant to Anders, this court has reviewed the record for potential error and has found none. Therefore, we affirm Taylor's sentence. We deny counsel's motion to withdraw. This court requires that counsel inform his client, in writing, of his right to petition the Supreme Court of the United States for further review. If the client requests that a petition be filed, but counsel believes that such a petition would be frivolous, then counsel may move in this court for leave to withdraw from representation. Counsel's motion must state that a copy thereof was served on the client. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5