UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 96-4804

MARK GUNTHER; GUNTHER'S LEASING
TRANSPORT, INCORPORATED,
Defendants-Appellants.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CR-95-255-WMN)

Argued: October 3, 1997

Decided: January 28, 1998

Before MURNAGHAN and WILKINS, Circuit Judges, and
MAGILL, Senior Circuit Judge of the United States Court of
Appeals for the Eighth Circuit, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William James Murphy, MURPHY & SHAFFER, Balti-
more, Maryland, for Appellants. Andrew Clayton White, Assistant
United States Attorney, Baltimore, Maryland, for Appellee. **ON
BRIEF:** Neil R. White, MURPHY & SHAFFER, Baltimore, Mary-
land, for Appellants. Lynne A. Battaglia, United States Attorney, Bar-

bara S. Sale, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Gunther's Leasing Transport, Inc. ("GLT") is a trucking company owned equally by Mark Gunther ("Gunther") and his wife. GLT and Gunther were convicted in the United States District Court for the District of Maryland of conspiracy to violate federal highway safety regulations, in violation of 18 U.S.C. § 371, and four counts of making false statements, in violation of 18 U.S.C.§ 1001. Gunther was convicted individually of two counts of perjury, in violation of 18 U.S.C. § 1621.

On appeal, Gunther challenges his perjury convictions, arguing that his testimony was not knowingly false. Gunther also asserts that the evidence is insufficient to sustain a conviction on the four false statement charges. Both Gunther and GLT contend that prosecutorial misconduct requires reversal of the convictions. We affirm.

I.

GLT is a nationwide over-the-road trucking company based in Hanover, Maryland. The present case arises out of administrative proceedings before the Federal Highway Administration ("FHWA"), a division of the Department of Transportation ("DOT"), in which GLT was found to be in violation of FHWA record-keeping requirements.

Federal highway safety regulations prohibit truckers from driving a tractor trailer for more than ten hours without a break of at least eight hours, and limit drivers to 70 hours of driving every eight days.

49 C.F.R. § 395.3 (1996). To ensure compliance with the hour limitations, the regulations require truck drivers to complete Records of Duty Status, also known as "drivers' logs," or"log books." Id. § 395.8. A driver's log is a graph on which a truck driver records his or her activities, 24 hours a day, even on days off.

Drivers must physically keep and produce on request all logs for the previous seven-day period. Id. § 395.8(k)(2). After seven days, drivers turn logs into the carrier. The regulations require the carrier to maintain the logs on file for at least six months. Id. § 395.8(k)(1).

In January 1992, the FHWA attempted to conduct a compliance audit of GLT. Gunther refused to produce the requested records, and asked the inspectors to leave the premises.

On March 30, the district court ordered GLT to produce the requested records for inspection. GLT replied that the drivers' logs for October through December of 1991 had been lost during renovations to GLT's headquarters building.

The district court then allowed the United States Attorney's Office to investigate the circumstances of the logs' disappearance through depositions of GLT employees. Gunther, GLT safety department director Keith Hughes ("Hughes"), GLT log auditor Jamie DeLuca ("DeLuca"), and GLT safety supervisor Michael Hoffman testified in their depositions that the logs had been lost during renovations at GLT. With the exception of Gunther, each witness subsequently admitted he had lied about the cause of the logs' disappearance, and stated that GLT safety department supervisor Louis Dale Higgins ("Higgins") had disposed of the logs.

Higgins testified in deposition that he had discarded the logs at Gunther's express direction. Gunther denied giving any such command. Gunther's denial formed a basis of the false declaration charge in the present proceeding, of which the jury acquitted Gunther.

On August 7, 1993, FHWA agents executed a search warrant at GLT headquarters and seized GLT pay records, dispatch sheets, and drivers' logs. Using the documents seized from GLT, inspectors

3

determined that GLT drivers were driving well in excess of the federal limits and that GLT was maintaining logs that did not reflect the true number of hours driven. Based on a random sampling of logs seized from GLT, inspectors concluded that 73% of GLT's maintained logs were false.

In November 1994, Gunther gave additional deposition testimony in the ongoing FHWA investigation into the destruction and falsification of logs. Portions of Gunther's testimony eventually formed the basis of the perjury charges in the instant case.

On June 20, 1995, the government indicted GLT and Gunther on one count of conspiracy to falsify the safety records, in violation of 18 U.S.C. § 371, and four counts of making false statements, in violation of 18 U.S.C. § 1001. In addition, Gunther was indicted on one count of making false declarations before a grand jury, in violation of 18 U.S.C. § 1623, and two counts of perjury, in violation of 18 U.S.C. § 1621.

The first perjury charge alleged that the following deposition testimony given by Gunther during the 1994 FHWA proceedings against GLT was knowingly false:

> Q: Did you ever request any Gunther's employees to dispose of the records of duty status of October, November and December of 1991?
>
> A: <u>No, not those specific months.</u>
>
> Q: You didn't specifically say throw these logs out for those months?
>
> A: <u>Absolutely not.</u>
>
> Q: Do you have any knowledge concerning the disappearance of those records of duty status for those three months, October, November and December of 1991?
>
> A: <u>Nothing other than hearsay.</u>

4

Q: You have no personal knowledge?

A: <u>None at all.</u>

Q: You don't know what happened to those records of duty status?

A: <u>Not at all.</u>

The second perjury count alleged that Gunther lied when he answered "absolutely not" to the question whether GLT had a "policy" of falsifying drivers' logs that showed violations of the safety regulations.

On December 20, 1995, the jury returned guilty verdicts against both defendants on all counts charged in the indictment, except that Gunther was acquitted of the false declarations charge. The defendants timely moved for judgments of acquittal and renewed their motions after the verdicts were returned. The district court denied the motions.

Gunther was sentenced to a 30 month term of imprisonment and GLT was fined $170,000. Both defendants have appealed.

II.

We first address Gunther's contentions that he did not commit perjury in the FHWA depositions.

A.

Gunther has maintained that his answers to the questions about the logs' disappearance were literally truthful, if evasive or misleading. Gunther's argument is founded on the Supreme Court's holding in <u>Bronston v. United States</u>, 409 U.S. 352 (1973), that a witness may not be convicted of perjury based on an answer that is "literally true but not responsive to the question asked and arguably misleading by negative implication." <u>Id.</u> at 352-53. While <u>Bronston</u> properly places the burden of imprecise questioning on the questioner, and allows the evasive but truthful witness to avoid a perjury prosecution, it does not

5

sanction the post-hoc justification of knowing falsehoods. "Imaginative hindsight will not save a defendant who has testified falsely." United States v. Martellano, 675 F.2d 940, 942 (7th Cir. 1982); see also United States v. Bell, 623 F.2d 1132, 1136 (5th Cir. 1980).

Gunther testified with respect to the logs' disappearance that he knew nothing but "hearsay," had no "personal knowledge," and did not know what "happened" to the logs. The evidence showed, however, that Gunther knew the logs had been discarded by Higgins when he gave the testimony in question. There was testimony that Gunther heard Higgins admit to throwing the logs away shortly after their destruction. Gunther confided to GLT sales director Ken Buck that he knew Higgins had thrown the logs away. Therefore, we hold that the jury reasonably determined that Gunther lied when he said he knew nothing about what "happened" to the logs.

Gunther contends, however, that the final question, like the ones that preceded it, called for Gunther's personal knowledge about the logs' disposal. So understood, Gunther concludes, he truthfully testified that he did not know what "happened" to the logs because he never "personally participated in, witnessed, or verified" the disposal of the records. We do not find in Gunther's disingenuous explanation a sufficient basis on which to overturn the jury's determination that Gunther's response was knowingly false. We therefore affirm the perjury conviction.*

_____

*Gunther has argued that unless we find all five answers untruthful, we must reverse the conviction. He maintains that in the absence of a special verdict, we may not assume that the jury's verdict was based on an answer that could support the conviction. Gunther, however, neither moved to withdraw the challenged assignments from the indictment nor for a special verdict. Because the issue was not properly preserved for appeal, we review it only for plain error. See United States v. Olano, 507 U.S. 725, 731 (1993). And, concluding that Gunther suffered no prejudice as a result of any error, see Griffin v. United States, 502 U.S. 46, 56-60 (1991) (upholding a general verdict when one of the possible bases of conviction was supported by inadequate evidence), we find no plain error, see Olano, 507 U.S. at 734.

6

B.

Gunther next contends that the prosecutor's query whether GLT had a "policy" of falsifying drivers' logs was "fundamentally ambiguous" and therefore insufficient as a matter of law to support a perjury conviction. See United States v. Lighte, 782 F.2d 367, 375 (2d Cir. 1986); United States v. Manapat, 928 F.2d 1097, 1099 (11th Cir. 1991). We conclude that the inquiry was sufficiently precise to support the conviction.

A question is fundamentally ambiguous only when "it [is] entirely unreasonable to expect that the defendant understood the question posed to him." United States v. Slawik, 548 F.2d 75, 86 (3d Cir. 1977), quoted in United States v. Reilly, 33 F.3d 1396, 1416 (3d Cir. 1994). An inquiry is not rendered fundamentally ambiguous merely because "the words in question have different meanings in different situations." Lighte, 782 F.2d at 375. In determining whether a question is fundamentally ambiguous, we must view the disputed term in context of the entire line of questioning. United States v. Bonacorsa, 528 F.2d 1218, 1221 (2d Cir.), cert. denied sub nom. Bonacorsa v. United States, 426 U.S. 935 (1976). Whether a question is fundamentally ambiguous is a matter of law that we review de novo. See Lighte, 782 F.2d at 375.

Gunther contends that because the term policy often refers to a formally-adopted business practice, it was unreasonable to expect him to understand that the government intended to inquire whether GLT safety department employees routinely altered logs. Viewed in context, the term "policy" is decidedly less ambiguous than Gunther has claimed. A question that asks whether a company has a policy of engaging in illegal practices cannot plausibly be understood to ask if the matter has been put to a vote before the board of directors or written into a corporate manual.

Furthermore, the government presented evidence that Gunther had instructed safety department employees to falsify logs. The government has argued, and we agree, "[i]t is difficult to imagine that an explicit instruction from the President and owner to his employees would constitute anything less than a `policy,' no matter how that word is defined."

7

Because the only logical interpretation of the question leads inexorably to a conclusion that Gunther's reply was untruthful, we affirm the second perjury conviction.

III.

We next consider Gunther's contention that the evidence was insufficient to support his conviction on the four false statements charges under 18 U.S.C. § 1001. Our standard of review is whether, viewing the evidence in the light most favorable to the government, "any rational trier of fact could have found the elements of the offense beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

The government must prove three elements to establish a violation of § 1001: "(1) the defendant made a false statement to a governmental agency or concealed a fact from it or used a false document knowing it to be false, (2) the defendant acted `knowingly or willfully,' and (3) the false statement or concealed fact was material to a matter within the jurisdiction of the agency." United States v. Arch Trading Co., 987 F.2d 1087, 1095 (4th Cir. 1993). In the instant case, the government sought to obtain Gunther's conviction through application of the accomplice liability principles of Pinkerton v. United States, 328 U.S. 640 (1946).

Under Pinkerton, a defendant may be convicted of a substantive offense if the government proves: (1) the existence of a conspiracy, (2) the defendant's knowledge of and participation in the conspiracy, and (3) the commission of the substantive offense by a coconspirator in furtherance of the conspiracy. See Pinkerton , 328 U.S. at 645-47; United States v. Chorman, 910 F.2d 102, 110-11 (4th Cir. 1990). Accordingly, the jury was instructed that it could convict Gunther of the § 1001 violations if it found that: (1) a conspiracy to falsify logs existed, (2) a substantive false statement was made, (3) the driver who made the false statement was a member of the conspiracy, (4) the false statement was made pursuant to the conspiracy, (5) Gunther was a member of the conspiracy at the time the false statement was made, and (6) Gunther could reasonably have foreseen that the false statement would be made.

8

Gunther does not contest the existence of the conspiracy. He maintains, however, that the government failed to prove that the four drivers who submitted false logs were members of the conspiracy. We do not agree.

The "gravamen of the crime of conspiracy is an agreement to effectuate a criminal act." United States v. Laughman, 618 F.2d 1067, 1074 (4th Cir.), cert. denied, 447 U.S. 925 (1980). The existence of an agreement may be proved by circumstantial evidence "that two or more persons acted in concert to achieve an illegal goal." Id. In the present case, the government offered testimony by the four drivers named in the false statement counts that they were often dispatched on long runs that could not be completed within the regulatory time limits. The drivers also testified, however, that GLT expected submitted logs to appear legal. There was further testimony that the drivers' submission of false logs was motivated at least in part by the financial benefits gained from driving hours in excess of those permitted by the FHWA regulations.

The evidence also established that Gunther personally monitored dispatch computers and was fully cognizant of the hours his drivers were on the road. Gunther therefore knew that his drivers had to falsify logs to feign compliance with the FHWA regulations. Moreover, Keith Hughes testified that Gunther personally directed Hughes to alter logs that did not demonstrate compliance with the time limitations.

In short, the government demonstrated that GLT and Gunther regularly dispatched drivers on long solo runs that could not be completed within the time permitted by the FHWA regulations and expected the safety department to alter logs that appeared illegal. The evidence also established that the drivers knew of the hour limitations but disregarded them and submitted false logs, partially because GLT expected drivers to do so, and partially because of the personal financial benefit involved.

We hold that the government's circumstantial evidence was sufficient to permit an inference that an implicit agreement existed between GLT, Gunther and the four drivers named in the false statement charges to falsify logs. See Laughman, 618 F.2d at 1074. There-

9

fore, we affirm Gunther's conviction on the four substantive false statement charges.

IV.

Gunther and GLT next allege error in the district court's refusal to grant a mistrial or a new trial based on alleged prosecutorial misconduct. The test for reversible prosecutorial misconduct requires the appellants to establish that the prosecutor's remarks were in fact improper, and that the remarks prejudiced the appellants' rights to a fair trial. United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993).

With one exception, the appellants timely objected to the prosecutor's remarks. We therefore review the district court's denial of a mistrial and of the appellants' motion for a new trial for abuse of discretion. United States v. Alonzo, 689 F.2d 1202, 1204 (4th Cir. 1982); United States v. Campbell, 977 F.2d 854, 859 (4th Cir. 1992), cert. denied sub nom. Campbell v. United States, 507 U.S. 938 (1993). We review the remark not subject to a timely objection for plain error. United States v. Olano, 507 U.S. 725, 731 (1993).

Having carefully considered the appellants' numerous allegations of misconduct arising from the government's rebuttal closing argument, we hold that the district court did not abuse its discretion in denying the defendant's motions for a mistrial and for a new trial. We are persuaded that the district court correctly found that several of the allegedly objectionable remarks made in closing were not improper in the context in which they were made. To the extent that other comments made during the government's rebuttal closing approached and perhaps passed over the threshold of impropriety, we find that they were invited by equally improper defense argument. See United States v. Young, 470 U.S. 1, 12 (1985); United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir. 1983), cert. denied sub nom. Wissler v. United States, 466 U.S. 972 (1984).

Gunther and GLT have also objected to the district court's denial of a mistrial based on the prosecutor's questions about the safety concerns served by the FHWA regulations and trucking accidents involving drowsy drivers. The prosecutor made six such comments over the course of the month-long trial. The district court instructed the jury

10

to disregard one question, admonished government counsel, and instructed the jury at defendants' request that"[n]either defendant is charged with a crime that concerns traffic accidents or the safe driving of any given driver." We hold that the district court took appropriate and sufficient steps to stem any prejudice flowing from the government's improper questions, and acted within its discretion in denying a mistrial. See United States v. Martin , 756 F.2d 323, 328 (4th Cir. 1985) (stating that "before granting a mistrial, the court should always consider whether the giving of a curative instruction or some alternative less drastic than a mistrial is appropriate.").

Finally, the appellants maintain that a series of questions addressed to Mrs. Gunther regarding payments by GLT to the Gunthers' minor children of more than $27,000 constituted reversible prosecutorial misconduct. We conclude, as did the district court, that the inquiries became relevant and permissible when defense counsel opened the door by seeking to paint the Gunthers as "workaholics" who put the success of GLT before personal gain. We therefore hold that the district court did not abuse its discretion in refusing to grant a mistrial.

CONCLUSION

The judgment in its entirety is hence

AFFIRMED.

11